**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------

P.C. and J.C., on behalf of D.C. and G.C.,

                                   Plaintiffs

                 - against -                                    **COMPLAINT**

New York City Department of Education,                   **08 CV 2806**

                                 Defendant.

---------------------------------------------------------------

        Plaintiffs, P.C. and J.C., on behalf of D.C. and G.C., by their attorneys, Mayerson & Associates, as and for their Complaint, alleges and states the following:

        1.   Plaintiffs D.C. and G.C., the twin daughters of plaintiffs P.C. and J.C., are minor children who have been diagnosed with an autism spectrum disorder.  D.C. and G.C. are, and at all relevant times have been, students within the New York City School District entitled to all rights, entitlements, and procedural safeguards mandated by applicable law and statutes including, but not limited to the Individuals with Disabilities Education Improvement Act ("IDEIA"), 20 U.S.C. § 1400, *et. seq.*, the pertinent implementing regulations promulgated under the Code of Federal Regulations, Article 89 of the New York State Education law and Part 200 of the Commissioner's Regulations.

        2.   Plaintiffs P.C. and J.C. are the parents of D.C. and G.C.  Plaintiffs are residents of the State of New York, residing at all relevant times at an address, in the Bronx, within the New York City Department of Education's Region 10, District 3.

3.   D.C. and G.C., and their parents P.C. and J.C., are not expressly identified herein because of the privacy guarantees provided in the IDEIA statute, as well as in the Family Educational Rights Privacy Act, 20 U.S.C. § 1232(g) and 34 C.F.R. § 99.

4.   Defendant New York City Department of Education ("NYCDOE"), upon information and belief, is a duly constituted school district organized under the laws of the State of New York, and is the agency charged with the obligations to provide D.C. and G.C. with a free and appropriate public education ("FAPE"), *see infra*, ¶ 8.

## THE RELIEF BEING SOUGHT

5.   This action is brought pursuant to the provisions of 20 U.S.C. § 1400, *et. seq.*, more commonly known as the IDEIA and, in particular, 20 U.S.C. §§ 1415(i)(2) and (3).  *See also*, 34 C.F.R. §§ 300.516 and 300.517.

6.   This action is being brought to secure statutory attorneys' fees that plaintiffs are entitled to recover pursuant to the fee-shifting provisions of the federal IDEIA statute, 20 U.S.C. §§ 1415(i)(3)(A)-(G).  P.C. and J.C., on behalf of D.C. and G.C., should be awarded attorneys' fees as the substantially prevailing party in due process hearings for the 2004-2005, 2005-2005, and 2006-2007 school years, under New York City Impartial Hearing Office Case Numbers 58190 (D.C.), 58191 (G.C.), 101832 (G.C.), 101833 (D.C.), 106516 (G.C.) and 106518 (D.C.), respectively.

## JURISDICTION AND VENUE

7.   This Court, pursuant to 20 U.S.C. §§ 1415(i)(2) and (3), 34 C.F.R. §§ 300.516 and 300.517, 28 U.S.C. §§ 1331 and 1367, has jurisdiction of this action without regard to the

amount in controversy.  Venue is proper in that plaintiff and defendant both reside in or are situated in this District.

8.  Pursuant to the IDEIA statute, as well as the New York State Education Law, all school agencies within the State are required to offer eligible students with disabilities special education programs and services that are tailored to meet the individual needs of each child with a disability.  The FAPE required under IDEIA will be different for each child, as IDEIA does not accept a "one size fits all" approach.

### FACTUAL BACKGROUND FOR D.C.'S 2004-2005 SCHOOL YEAR

9.  On or about August 22, 2004, P.C. and J.C., through their attorneys, Mayerson & Associates, filed a due process impartial hearing request at the administrative level (Case No. 58190) in an effort to secure reimbursement and other relief relating to the 2004-2005 school year for the cost and expenses of D.C.'s home-based program and special education services. D.C.'s parents filed for due process when the NYCDOE failed to recommend and provide an appropriate placement and program individualized to meet D.C.'s unique special education needs.

10. The evidentiary hearings in this matter took place on April 20, and May 3, of 2005. Christina Thivierge, Esq., of Mayerson & Associates represented the plaintiffs.  The NYCDOE conceded it did not provide D.C. with an appropriate program, thereby finding in plaintiffs' favor on Prong I of the Burlington/Carter test for relief.[1]   However, the NYCDOE challenged the

---

[1] Reference is made to School Committee of Burlington v. Dept. of Educ. of Massachusetts, 471 U.S. 359, 105 S.Ct. 1996 (1985), and Florence Court School Dist. Four v. Carter, 510 U.S. 7, 114 S.Ct. 361 (1993), which set the standards for determining whether a handicapped child's unilateral educational placement is eligible for reimbursement relief.

appropriateness of D.C.'s home-based program as "excessive and not required to maintain D.C.'s progress."

11. Plaintiffs entered 25 exhibits and the testimony of five witnesses into evidence in support of their case.  The NYCDOE did not offer any testimony, or documentary evidence challenging the appropriateness of the program privately arranged by D.C.'s parents.

12. By "Findings of Fact and Decision" dated July 26, 2005, Impartial Hearing Officer Judith Schneider, Esq., rendered an award in favor of plaintiffs, establishing plaintiffs as the substantially prevailing party in the administrative due process proceeding.[2]  Defendant never appealed from this decision, which thus became final and non-appealable on or about August 31, 2005.

### FACTUAL BACKGROUND FOR G.C.'S 2004-2005 SCHOOL YEAR

13. On or about August 22, 2004, P.C. and J.C., through their attorneys, Mayerson & Associates, filed a due process impartial hearing at the administrative level (Case No. 58191) in an effort to secure reimbursement and other relief relating to the 2004-2005 school year for the cost and expenses of G.C.'s home-based program and special education services.  G.C.'s parents filed for due process when the NYCDOE failed to recommend and provide an appropriate placement and program individualized to meet G.C.'s unique special education needs.

14. The evidentiary hearings on this matter took place on April 20, May 10, and May 11, of 2005.  Christina Thivierge, Esq., of Mayerson & Associates represented the plaintiffs.  The NYCDOE conceded it had not provide G.C. with an appropriate program, thereby finding in

---

[2] A redacted copy of this decision is annexed hereto as Exhibit A.  Please note that all exhibits have been redacted so as to protect the privacy of the family.  See ¶ 3.

plaintiffs' favor on Prong I of the <u>Burlington</u>/<u>Carter</u> test for relief.  However, the NYCDOE challenged the appropriateness of G.C.'s home-based program as "excessive and not required to maintain G.C.'s progress."

15. Plaintiffs entered 23 exhibits and the testimony of six witnesses into evidence in support of their case.  The NYCDOE did not offer any testimony, or documentary evidence challenging the appropriateness of the program privately arranged by G.C.'s parents.

16. By "Findings of Fact and Decision" dated July 26, 2005, Impartial Hearing Officer Judith Schneider, Esq., rendered an award in favor of plaintiffs, establishing plaintiffs as the substantially prevailing party in the administrative due process proceeding.[3]  Defendant never appealed from this decision, which thus became final and non-appealable on or about August 31, 2005.

## FACTUAL BACKGROUND FOR G.C.'S 2005-2006 SCHOOL YEAR

17. On or about September 13, 2005, P.C. and J.C., through their attorneys, Mayerson & Associates, filed a due process impartial hearing at the administrative level (Case No. 101832) in an effort to secure reimbursement and other relief relating to the 2005-2006 school year for the cost and expenses of G.C.'s home-based program and special education services.  G.C.'s parents filed for due process when the NYCDOE failed to recommend and provide an appropriate placement and program individualized to meet G.C.'s unique special education needs.

18. The evidentiary hearings on this matter took place on October 7, 2005 and April 27 and April 28, of 2006.  Christina Thivierge, Esq., of Mayerson & Associates represented the plaintiffs.  The NYCDOE contended it had offered G.C. a FAPE and challenged the

---

[3] A redacted copy of this decision is annexed hereto as Exhibit B.

appropriateness of G.C.'s home-based program (Prongs I and II of the <u>Burlington</u>/<u>Carter</u> test for relief.)  Plaintiffs bore the burden of proof, pursuant to <u>Schaffer v. Weast</u>, 546 U.S. 49, 126 S.Ct. 528 (2006), in regards to the appropriateness of the services provided to G.C.

19. Plaintiffs entered 11 exhibits and the testimony of five witnesses into evidence in support of their case.  The NYCDOE entered 51 exhibits and the testimony of two witnesses into evidence.

20. By "Findings of Fact and Decision" date July 31, 2006, Impartial Hearing Officer Marymargaret Keniry, Esq., rendered an award in favor of plaintiffs, establishing plaintiffs as the substantially prevailing party in this administrative due process proceeding.[4]  Defendant never appealed from this decision, which thus became final and non-appealable on or about September 5, 2006.

## FACTUAL BACKGROUND FOR D.C.'S 2005-2006 SCHOOL YEAR

21. On or about September 13, 2005, P.C. and J.C., through their attorneys, Mayerson & Associates, filed a due process impartial hearing at the administrative level (Case No. 101833) in an effort to secure reimbursement and other relief relating to the 2005-2006 school year for the cost and expenses of D.C.'s home-based program and special education services.  D.C.'s parents filed for due process when the NYCDOE failed to recommend and provide an appropriate placement and program individualized to meet D.C.'s unique special education needs.

22. The evidentiary hearings on this matter took place on October 7, 2005 and April 24, April 25, May 11, May 23, and June 13, of 2006.  Christina Thivierge, Esq., of Mayerson & Associates represented the plaintiffs.  The NYCDOE contended it had offered D.C. a FAPE and challenged

---

[4] A redacted copy of this decision is annexed hereto as Exhibit C.

the appropriateness of D.C.'s home-based program (Prongs I and II of the <u>Burlington</u>/<u>Carter</u> test for relief.)  Plaintiffs bore the burden of proof, pursuant to <u>Schaffer v. Weast</u>, 546 U.S. 49, 126 S.Ct. 528 (2006), in regards to the appropriateness of the services provided to D.C.

23. Plaintiffs entered 24 exhibits and the testimony of six witnesses into evidence in support of their case.  The NYCDOE entered 80 exhibits and the testimony of two witnesses into evidence.

24. By "Findings of Fact and Decision" date August 9, 2006, Impartial Hearing Officer Marymargaret Keniry, Esq., rendered an award in favor of plaintiffs, establishing plaintiffs as the substantially prevailing party in this administrative due process proceeding.[5]  Defendant never appealed from this decision, which thus became final and non-appealable on or about September 14, 2006.

### FACTUAL BACKGROUND FOR G.C.'S 2006-2007 SCHOOL YEAR

25. On or about September 11, 2006, P.C. and J.C., through their attorneys, Mayerson & Associates, filed a due process impartial hearing at the administrative level (Case No. 106516) in an effort to secure reimbursement and other relief relating to the 2006-2007 school year for the cost and expenses of G.C.'s tuition and special education services.  G.C.'s parents filed for due process when the NYCDOE failed to recommend and provide an appropriate placement and program individualized to meet G.C.'s unique special education needs.

26. The evidentiary hearings on this matter took place on October 3, 2006, and January 8 and January 26, 2007.  Christina Thivierge, Esq. of Mayerson & Associates represented the plaintiffs. The NYCDOE took no specific position, but it generally opposed plaintiffs' position.  Plaintiffs

---

[5] A redacted copy of this decision is annexed hereto as Exhibit D.

bore the burden of proof for all three prongs of the <u>Burlington</u>/<u>Carter</u> test, pursuant to <u>Schaffer v.</u> <u>Weast</u>, 546 U.S. 49, 126 S.Ct. 528 (2006), in regards to the appropriateness of the services provided to G.C.

27. Plaintiffs entered 13 exhibits and the testimony of five witnesses into evidence in support of their case. The NYCDOE provided no documentary or testimonial evidence.

28. By "Findings of Fact and Decision" dated February 16, 2007, Impartial Hearing Officer Ellen Fluhr Thomas, Esq., rendered an award in favor of plaintiffs, establishing plaintiffs as the substantially prevailing party in this administrative due process proceeding.[6] Defendant never appealed from this underlying administrative decision, which thus became final and non-appealable on or about March 21, 2007.

## FACTUAL BACKGROUND FOR D.C.'S 2006-2007 SCHOOL YEAR

29. On or about September 11, 2006, and amended January 3, 2007, P.C. and J.C., through their attorneys, Mayerson & Associates, filed a due process impartial hearing at the administrative level (Case No. 106518) in an effort to secure reimbursement and other relief relating to the 2006-2007 school year for the cost and expenses of D.C.'s tuition and special education services. D.C.'s parents filed for due process when the NYCDOE failed to recommend and provide an appropriate placement and program individualized to meet D.C.'s unique special education needs.

30. The evidentiary hearings on this matter took place on October 11, 2006, and January 19, 2007. Christina Thivierge, Esq. of Mayerson & Associates represented the plaintiffs. The NYCDOE conceded to Prong I of the <u>Burlington</u>/<u>Carter</u> test, however, it challenged the

---

[6] A redacted copy of the decision has been annexed hereto as Exhibit E.

appropriateness of D.C.'s unilateral program.  Pursuant to <u>Schaffer</u>, plaintiffs bore the burden of proof in regards to the appropriateness of the services provided to D.C.

31. Plaintiffs entered 16 exhibits and the testimony of five witnesses into evidence in support of their case.  The NYCDOE did not offer any testimony or documentary evidence regarding the claims raised by D.C.'s parents.

32. By "Amended Findings of Fact and Decision" dated March 15, 2007, Impartial Hearing Marc Weiner, Esq., rendered an award in favor of plaintiffs, establishing plaintiffs as the substantially prevailing party in this administrative due process proceeding.[7]  Defendant never appealed from this underlying administrative decision, which thus became final and non-appealable on or about April 20, 2007.

## CONCLUSION

33. The defendant is liable to pay plaintiffs their reasonable attorneys' fees arising out of D.C. and G.C.'s successive IDEIA administrative due process proceedings, and in this action. The fees requested herein are entirely reasonable and appropriate because:

(a) upon information and belief, plaintiffs' attorneys' office is the only firm in the country whose practice is devoted almost exclusively to representing children and adolescents diagnosed with autism spectrum disorders, like D.C. and G.C., in educational rights disputes;

(b) the principal of plaintiffs' attorneys' firm has testified before the United States Congress on the subject of the educational rights of children diagnosed with autism spectrum disorders;

---

[7] A redacted copy of the decision has been annexed hereto as Exhibit F.

(c) plaintiffs' attorneys have published and presented on the subject of the educational rights of children diagnosed with autism spectrum disorders;

(d) plaintiffs' attorneys have special knowledge and expertise concerning the educational needs of children diagnosed with autism spectrum disorders;

(e) plaintiffs' attorneys' office has represented children diagnosed with autism spectrum disorders in numerous states across the nation, and has consulted to families outside of the United States; and

(f) to the extent that there is a "prevailing rate" in the Southern District of New York for sophisticated autism intervention cases, plaintiffs' attorneys' prevailing rates are reasonable and within the applicable standard.

34. Necessary duties involved with preparing D.C. and G.C.'s cases for administrative due process hearings for the 2004-2005, 2005-2006 and 2006-2007 school years included, but were not limited to: (a) corresponding with plaintiffs and D.C. and G.C.'s witnesses; (b) holding numerous telephone conferences; (c) writing and filing impartial due process hearing requests; (d) reviewing and disclosing documentary evidence relevant to D.C. and G.C.'s claims; (e) scheduling and preparing witnesses to testify at impartial hearing dates; (f) preparing opening and closing statements; (g) preparing all pre- hearing and post-hearing motions and briefs; and (h) developing effective case presentations for the 2004-2005, 2005-2006, and 2006-2007 school years.

35. For all of the above efforts, plaintiffs should be awarded attorneys' fees, related costs and disbursements for the 2004-2005, 2005-2006 and 2006-2007 school years for D.C. and G.C. in an amount to be set by this Court, at plaintiffs' counsel's prevailing rates.

**PRAYER FOR RELIEF**

WHEREFORE, by reason of the foregoing, this Court should (a) fix and award plaintiffs their statutory attorneys' fees and related costs and disbursements from the IDEIA due process proceedings for the 2004-2005, 2005-2006, and 2006-2007 school years in an amount to be set by the Court, at plaintiffs' counsel's prevailing rates, (b) award plaintiffs the attorneys' fees and related costs and disbursements associated with this action in an amount to be set by the Court, and (c) award plaintiffs such other, different and further relief as this Court deems proper.

Dated: March 17, 2008
      New York, New York

Christina Thivierge (CT 9565)
Mayerson & Associates
330 West 38th Street, Suite 600
New York, New York 10018
(212) 265-7200
(212) 265-1735 (facsimile)
christina@mayerslaw.com

# FINDINGS OF FACT AND DECISION

| | |
|---|---|
| Case Number: | 58190 |
| NYS Case Identifier Number: | 13134 |
| Student's Name: | D████ C████ |
| Date of Birth: | March 14, 1997 |
| District: | 11 |
| Hearing Requested By: | Parent |
| Dates of Hearings: | April 20, 2005<br>May 3, 2005 |
| Hearing Officer: | Judith Schneider, Esq. |

Hearing Officer's Findings of Fact and Decision                                1

Case No.  58190

---

NAMES AND TITLES OF PERSONS WHO APPEARED ON APRIL 20, 2005

| | | |
|---|---|---|
| Mother | | Parent |
| Christina Thivierge, Esq. | Attorney | Parent |
| Vincent Carbone (via telephone) | Director, Carbone Clinic | Parent |
| Mariam Mahmood, Esq. | DOE Attorney | DOE |
| Mark Parent | Psychologist, CSE, Region 2 | DOE |

NAMES AND TITLES OF PERSONS WHO APPEARED ON MAY 3, 2005

| | | |
|---|---|---|
| Mother | | Parent |
| Christina Thivierge, Esq. | Attorney | Parent |
| Rachel Malloy | Occupational Therapist | Parent |
| Jean Marie Cova (via telephone) | ABA Therapist, | Parent |
| Aimee Kuhn | Speech and Language Pathologist | Parent |
| Marian Mahmood, Esq. | Agency Attorney | DOE |
| Mark Parent | Psychologist-CSE Region 2 Repr. | DOE |

Case No.  58190

---

On April 20 and May 3, 2005, I conducted hearings pursuant to the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. sections 1400 et seq. regarding the special education of D ("D" or "the student".)  The hearings were held at the Impartial Hearing Office, Department of Education of the City of New York ("DOE"), 2nd Floor, 131 Livingston Street, Brooklyn, NY.  The hearing was requested by the parent on January 10, 2005 (Exh. *I*).  I was appointed on January 11, 2005. (Exh. *II*)  Various adjournments and extensions of the decision date were granted at the request of the parties.   The record closed on July 13, 2005 upon receipt of all Post-Hearing Memoranda ("Memorandum").

## BACKGROUND

D is an eight-year old girl with a severe autism spectrum disorder.  (Tr. at 72)  Her twin sister has the same disability. (Exh. *I* )   Autism was diagnosed at age 2 and she has received services from the DOE since then..  (Tr. at 227-228)  Commencing in the 2002-2003 school year, D attended a state approved school ("the school") that provides special education services to children with autism and related disabilities. (Tr. at 54 )  During the 2003-2004 school year, D attended the school about 5 hours a day and received one to one services from a teacher's assistant throughout the day.   She also received an additional approximately 20 hours of ABA and speech and language at home. (Tr. at 152)  In Summer 2003, the parent had consulted Dr. Vincent Carbone and D began receiving additional ABA services from the Carbone Clinic ("the Clinic") and his program began to be implemented in the home-based part of D's program.  Positive results were observed there.  (Tr. at 260)  In December 2003, attempts to transfer the program to the school were commenced but these efforts failed.   (Tr. at 55, 259-260)

D severely regressed during her attendance at the school. (Tr. 256-257, 183-184, Exh. 1)  At IEP meetings in March and May 2004, the parent requested a home-based program.  The CSE panel agreed that a classroom environment was not appropriate for D and that she had regressed at the school. (Tr. at 262, Exh. 14)  The IEP, however, recommended a New York State approved non-public school (day) (6:1:1) and speech and language (5:30:1), occupational therapy (4:30:1) and a crisis management para daily 1:1. (Exh. 3)

Case No. 58190

On May 17, 2004, the parent advised the DOE that she would implement a full home based program that included 1:1 ABA therapy, a supervisor/consultant for the home-based program, speech therapy and occupational therapy. She stated that she would seek to hold the DOE responsible financially. (Exh. 5) In August 2004, the parent requested that the DOE provide a 45 hours per week ABA program, 5 hours a week of a home program consultant, 10 hours a week of speech and language therapy and 5 hours a week of occupational therapy. (Exh. 12)

A request for an impartial hearing was filed on August 22, 2004. (Exh. 12) Settlement of this matter was discussed but was not approved. (Exh. *I*) On January 10, 2005, an impartial hearing was again requested. (Exh. *I*)

Pursuant to the May 2004 IEP, in the 2004-2005 school year the DOE has continued to provide 12 hours a week of ABA services, 2 ½ hours a week of speech and language therapy (5:30:1) and 2 hours a week of occupational therapy (5:30:1) (Tr. at 13) These service were alleged to have been provided according to the school calendar and not on a 52 week basis. (Parent Memorandum at 2) The DOE also provided an additional hours of ABA services but only for the period from September 1, 2004 through December 31, 2004. (Parent Memorandum at 2-3)

In September 2004, the parent had increased the weekly services D was receiving to about 45 hours of 1:1 ABA services (divided between the home based and clinic programs) and 10 hours of 1:1 speech and language. D continued to receive two hours weekly of occupational therapy. Such consultation to the home-based program as was provided was through the Carbone Clinic and was included within the ABA hours provided to it. (Tr. at 90-92)

## POSITION OF THE PARTIES

The parent asserts that for the 2004-2005 school year the following is an appropriate program for D: 45 hours a week of (1:1) ABA services (15 hours a week through the Carbone Clinic and 30 hours a week in the home program); 5 hours a week of a home program consultant; 10 hours a week of (1:1) speech and language therapy; 3 hours a week of (1:1) occupational therapy; and all services to be provided on a 7 day a

Case No.  58190

_____

week 52 weeks a year basis from September 1, 2004 through August 31, 2005.  The
parent seeks reimbursement or payment by the DOE, as appropriate, for services pursuant
to the requested program received by D but not paid for by the DOE.  The parent also
seeks compensatory hours for home consultant, ABA, speech and language and
occupational hours alleged to have been required but which were not provided.
Reimbursement of transportation costs is also requested.

The DOE concedes that it did not offer D a "free and appropriate public
education" ("FAPE") for the 2004-2005 school year. (Tr. at 8-9)   However, the DOE
asserts that: the aggregate of 45 hours of ABA is excessive and not required to maintain
D's progress; 5 hours of ABA home program consultant is unnecessary and should be
denied; and two hours of occupational therapy, which has been provided by the DOE, is
appropriate and the additional hour of occupational therapy sought by the parent should
be denied.  Further, the DOE asserts that reimbursement to the parent should be limited to
the actual cost incurred by the parent.


## CASE PRESENTED BY THE DOE

The DOE's attorney conceded that the DOE did not offer FAPE for the 2004-2005
school year.  (Tr. at 8-9)  No testimony was presented by the DOE and no evidence was
submitted.  (Tr. at 8 )


## CASE PRESENTED BY THE PARENT

Dr. Vincent Carbone testified that he is a Board Certified Behavior Analyst, has
worked in the field of autism and behavioral analysis for almost 30 years and has worked
with thousands of children on the autism spectrum.   He owns and operates the Carbone
Clinic ("the Clinic") which provides daily ongoing educational services to children with
autism and is a consultant in various school districts throughout the country.  (Tr. 23-31)

Dr. Carbone testified that a high rate of interfering behaviors is more directly
related to outcomes in learning than any other single constellation.  (Tr. at 40, 42-43) He

Hearing Officer's Findings of Fact and Decision                                              5

Case No. 58190

testified that he met with the parent in the Summer 2003 but had some knowledge of D previously due to his consultant work at the school. (Tr. at 50) He stated that while at the school, D was exhibiting self-stimulatory behaviors "at a very, very high" and "alarming rate" , that it was very difficult to teach her mainly due to her stereotypic self-stimulatory behaviors, and that her rate of acquisition skills was very low. (Tr. at 54, 51-52) Dr. Carbone testified that effective procedures to reduce self-stimulatory behaviors in D's case require a person well-trained in reduction of problem behavior and acquisition of skills devoting attention (1:1) to her. (Tr. at 67) The Clinic's effort to work with the staff at the school was not effective. (Tr. at 55-57) Therefore, in Summer 2004, Dr. Carbone had recommended an increase in time in both her home ABA program and at the Clinic. The Clinic provided training to the home staff so there would be consistency (Tr. at 58-60) As a result of the training and increased hours, there was a dramatic decrease in the stereotypical behaviors, D was more teachable, and there was a dramatic increase in her acquisition of target skills. (Tr. at 62-65, Exh. 15 and 20)

Dr. Carbone concluded that D requires a 45 hours a week (1:1) ABA program that includes team meetings in her home program. (Exh. 15, Tr. at 67-68, 84) He stated that without that level of intervention she would not make reasonable educational progress, would not benefit from instruction and would regress. (Tr. at 68) He testified that the data shows that D has substantially benefited and has made reasonable and readily observable progress with her current program and services. (Tr. at 69-70) Quite a bit of D's stereotypical behavior, he stated, is hardly ever occurring now although previously it occurred almost continuously. (Tr. at 75)

With regard to home program consultation needs, Dr Carbone testified that "because [D] is a complex learner whose program needs to be revised on an ongoing basis...it will probably require at least five hours of a Board Certified person who can look at the data, talk to the teachers, watch [D] and make moment to moment, week to week decisions about how the program needs to change in order to maintain her level of progress." (Tr. at 79) The Clinic has trained the staff and coordinated programming with home staff. (Tr. at 85-86)

Case No. 58190

Jean Marie Cova testified that she is the home ABA program supervisor. She has extensive training in autism and is a DOE approved provider. (Tr. at 106-108)    She began working with D when she was two years old and has been the lead teacher in her home program for about five years. (Tr. at 109)   D started in the school at age five and started to lose previously acquired skills and exhibit more and new self-stimulatory behaviors ("stims") which made her unavailable for learning. (Tr. at 111-113) During the 2003-2004 school year, her stims were constant and she also became self-injurious and aggressive.   (Tr. at 115-116)  Ms. Cova attended the March 2004 IEP meeting and the CSE team agreed that the school placement was not appropriate but stated that the home-based program requested by the parent could not be approved at its level.    At the May 2004 IEP meeting, the parent's request for a home-based program was denied.  (Tr. at 117-118)

Ms. Cova testified that since September 2004, D has received about 30 hours a week of home based ABA services in addition to the about 15 weekly hours provided by the Clinic. (Tr. 118-119, 147)   As lead teacher, Ms Cova has monthly meetings and consults with other therapists-ABA, speech and language, and occupational therapy.  She also consults with the Clinic and incorporates what they are working on into the home program to enhance and change it. (Tr. at 119-120)  She testified that many types of teaching styles have been tried with D but in her professional opinion at this time one on one teaching with the skills broken down works well for D.  (Tr. at 120-125)

Ms. Cova stated that since August 2004 D's behaviors have decreased dramatically, she is more available for learning and her articulation has improved.  (Tr. at 125-127, 145-146, 166)   She testified as to substantial acquisition of new, more complex skills between September 2004 and February 2005.  (Tr. 135-140, 155-157, Exh. 16, 18) She stated that since February 2005, D continues to make large gains in all areas. (Tr. at 136)  She testified that regression occurs when there is a break in schedule or even a reduction of hours and described a period when D was sick for 10 days and her hours were reduced and that it took at least 7 days after the break to return to her former level. (Tr. at 126-129, 148, 173-174)   Ms. Cova testified that a reduction of even 10 hours in

Hearing Officer's Findings of Fact and Decision

Case No. 58190

the ABA program hours would result in a reduction of skills because self-stimulatory behavior increases when she is left on her own. (Tr. 141-143)  Similarly, a delivery of ABA therapy on even a two to one basis would have the same result. (Tr. at 143)  She recommended that D receive a total 45 hours a week of ABA services, for 52 weeks a year.  (Tr. at 147)  She stated that the skills that a large majority of the goals and objectives worked on in the home and clinic are those needed to enable D's return to the classroom. (Tr. at 150, 177)

Ms. Aimee Kuhn testified that she has worked with autistic children for eight years as a speech and language pathologist and previously taught autistic children as a one to one special education teacher.  She has worked with over a hundred children on the autism spectrum and is currently a DOE approved provider.  (Tr. at 178-180)  She commenced working with D, in February 2004 at the parent's expense but through RSA's provided by DOE by June 2004, D was receiving five to seven hours of speech therapy a week.  In September 2004, D began receiving 10 hours a week.  (Tr. at 181-182)

When the parent first came to her, the student was seven years old and she "did not have a communication system in place whatsoever, at all."   She spoke only in syllables and was very frustrated most of the time. (Tr. at 183)   When D was tested in August 2004, Ms. Kuhn was able to determine D's original intent on only 6 of 50 spontaneous utterances.  (Tr. at 184, Exh. P-9)  She was unable to test receptive speech or administer the preschool test. (Tr. at 186)  Ms. Kuhn stated the D has significant oral and verbal apraxia.  (Tr. at 187)  In her sessions with D, Ms. Kuhn carried over the behavior strategies that they were using in the Clinic and at the home program to decrease behaviors that were interfering with D's participation. (Tr. 192-194)  Ms. Kuhn testified with regard to D's verbal apraxia, that within one year D had gone from only making sounds to being a "completely verbal child". (Tr. at 197) Ms. Kuhn testified that initially she had concentrated on increasing intelligibility but that for about a month she had been concentrating on the receptive and expressive skills and "she has been making fabulous improvements." (Tr. at 200)  She stated that when she started, D's age level in speech was at a one-year old level and that currently it was at a three-year old level.  Further,

Case No. 58190

although D was moving through the process quickly, there was a great deal she had to unlearn to continue to progress. (Tr. at 225, 211, 213-214) Ms. Kuhn stated that the fact that D did not get appropriate speech therapy until the age of seven had an effect on her recommendation that 10 hours of speech and language therapy should be provided for the 2004-2005 school year. (Tr. at 214)    She testified that almost all of the progress occurred since September 2004 with the initiation of the student's home program and 10 hours of speech and that she believed D would regress without it. (Tr. at 197, 216)

Ms. Rachel Malloy testified that she is DOE approved provider of occupational therapy and has a Masters degree in occupational therapy with a concentration of pediatrics. (Tr. at 229-230) She has worked with D since approximately October-November 2004. (Tr. at 230) She stated that as a consequence of severe sensory impairment D has a lot of spasticity which prevents her from attending to task. D also finds it difficult to filter out distractions and is impeded by anxiety. (Tr. at 232-233) She stated that 15-20 minutes is lost per session because due to the requirement that she self regulate her behaviors. Therefore, only some 10-15 minutes remain of a 30 minute session which is insufficient time to produce a benefit. (Tr. at 239-243) Ms. Malloy stated that she believed that due to D's sensory deficits two 60 minute sessions per week would not be sufficient because D would not have appropriate carryover to the home. Therefore, she recommended three 60 minute sessions per week. (Tr. at 244, 252) Ms. Malloy stated that D suffers severe regression when she misses sessions and that missing two sessions almost requires four sessions to get back on track. (Tr. at 241-245)

D's mother testified that by March 2003 D was a becoming a danger to herself and others, was no longer intelligible, and no longer consistently demonstrated skills that she had learned in pre-school. She stated that D was stimming the entire day and the after school ABA program became unsuccessful because she could not calm down enough to learn after having been out of control for six hours. (Tr. at 267-258)

Case No.  58190

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The legal standard applicable to a request for reimbursement for educational services is well established.  Reimbursement is granted if:  (1) the services offered by the Board of Education are inadequate or inappropriate; (2) the services selected by the parent are appropriate; and (3) equitable considerations support the parent's claim.  (School Comm. of Burlington v. Department of Educ. of Mass., 471 U.S. 359 [1985])

The Board of Education bears the burden of demonstrating the appropriateness of the program recommended by its CSE.   (M.S. v. Bd. of Educ. of the City of Yonkers, 231 F2d 96, 102 [2d Cir. 2000], Application of a Child Suspected of Having a Disability, Appeal No. 93-9)  Here, the DOE has conceded that it did not offer FAPE.

When a public school system has failed to provide FAPE, the program chosen by the parent is "proper under the Act" if the education provided is "reasonably calculated to enable the child to receive educational benefits."   (Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 (1993))    The parent bears the burden of proof with regard to the services obtained by the parent for the student.  (Application of a Child with a Disability, Appeal No. 94-29)

The parent asserts that D requires, on a 7 day-52 week basis, 45 hours (1:1) ABA, 5 hours home program supervision/consultation, 10 hours (1:1) speech and language therapy and three hours (1:1) occupational therapy.   The program the parent provided thus far did not include the home-based supervision component and provided an aggregate of two hours of occupational therapy, one hour less than that requested.

The parent's claim that D has made substantial progress since September 2004 is supported by credible testimony and evidence. The DOE has not contested or rebutted that claim. However, the DOE argues that 45 weekly hours of ABA is excessive, that home program consultation is unnecessary and that occupational therapy of two hours, in 60 minute sessions, is appropriate. (The DOE has not contested the provision of 10 hours of speech and language.  Further, the credible evidence shows that requested speech and language service is appropriate in view of D's deficits, the progress that she has made

Case No. 58190

---

since it was commenced and the regression demonstrated when that therapy was reduced.)

With regard to the number of weekly ABA hours, Dr. Carbone testified that D required a high level of intensity of one to one instruction. He stated that although 25-40 hours could be considered a "high level of intensity," the determination of what is required must be made with consideration of individual needs. (Tr. at 68) Factors considered are level of impairment, problem behavior in the form of aggression, rate of self-stimulatory behavior and the level of skill acquisition. (Tr. 47-49) Dr. Carbone testified that given D's "extreme needs," 45 hours is appropriate for her. (Tr. at 94) Further, he asserted that empirical studies from which the range derived involved children who were less impaired than D. (Tr. at 95) He noted that D's is a challenging case that requires time-consuming constant monitoring and reevaluation of data. (Tr. at 65-66) Dr. Carbone testified further that the increase in benefit to D became a "reasonable" one only after the increase in hours and that the benefit prior to September 2004 was "very, very minimal" (Tr. 78-79) Ms. Cova testified that G continues to have difficulty when left alone and will engage in self-stimulatory activity and scripting. (Tr. 141-143) The DOE has presented no evidence to rebut the credible testimony of the parent's witnesses. The evidence shows that the parent's request for an aggregate of 45 hours of ABA for D for the 2004-2005 school year is not excessive and is appropriate.

With regard to the 5 hours of home program supervision, Dr. Carbone acknowledged that D has made dramatic progress in the program thus far provided by the parent. (Tr. at 62-65) The Clinic has coordinated programming with the home staff which provides consistency. (Tr. 58-60, 85-86) Home providers are at the clinic on a regular basis and sharing data and the Clinic provides some training and oversight for the home program. (Tr. 86, 92) Dr. Carbone testified that supervision of the home program has been going on and is built into the Clinic's instructional fees. (Tr. at 91-92) Further, Ms. Cova testified that she looks at the programs weekly, has regular meetings with the therapists, reviews the graphed data and looks it over to see if D is making gains and to change teaching procedures and add different ways of teaching it necessary. (Tr. at 121,

Case No. 58190

_____

127-128.) She stated that she visits the Clinic and consults and that the Clinic specifies the goals and skills it is working on, after its assessment, and the home program staff try to work on similar things. (Tr. at 167, 138) Accordingly, the evidence shows that substantial supervision and consultant services are provided within the program as currently constituted. Although, Dr. Carbone stated that he thought it would be "better" if people went to the home and actually observed the program there, he has also concluded that the current program provides dramatic benefits. (Tr. at 92) The DOE is not required to provide an optimal program when it has failed to provide FAPE. The evidence shows that a requirement of an additional 5 hours of home consultant services is not reasonable or necessary in the circumstances of the instant matter. (Application of a Child with a Disability, Appeal No. 01-094.)

        The DOE also objects to the addition of another hour of occupational therapy and asserts that two 60 minute sessions are sufficient. However, Ms. Malloy has testified as to D's severe sensory impairment and anxiety and has concluded that the arrangement proposed by the DOE would not permit sufficient carryover to the home. Further, she stated that more frequent but shorter sessions, as provided in the IEP, would result in substantial loss of benefit due to time lost as a consequence of D's significant need to self regulate at the commencement of each session. The credible testimony of the parent's witness has not been rebutted by the DOE. The evidence shows that the provision of three 60 minute sessions is appropriate.

        Further, the credible and unrebutted testimony concerning the adverse effect of a break of even a week in the schedule of services provided demonstrates that the D's program should provided on a 7 day-52 week basis.

        Accordingly, the burden of the parent to show that the program selected for the student was appropriate has been met except with regard to the request for 5 hours of home program consultant time.

        Although acknowledging that the DOE has provided certain ABA, speech and language, and occupational therapy services, it is asserted that provision of those services followed the school calendar. The parent requests compensatory educational services for

Case No. 58190

services not provided during holidays and breaks. The parent also requests compensatory occupational therapy hours for the additional hour provided. Compensatory educational services in this matter are denied. The requested hours are a small part of a comprehensive program and therefore the deprivation is limited and may be made up through the provision of additional services in the future if necessary. (Application of a Child With a Disabiity), Appeal No. 02-042)

### EQUITABLE CONSIDERATIONS

Credible uncontested evidence demonstrates that the parent attended and participated in each IEP meeting, cooperated with CSE in the evaluation and preparation of D's IEP and visited schools suggested, although not offered, by the DOE. There is no dispute that proper notice was given concerning the parent's objections to IEP and her requests. Accordingly, the equities favor the parent in connection with the program requested except with regard to the 5 hour home program consultant. Supervisory services reasonably calculated to enable to D to receive educational benefit were provided through the Carbone Clinic in coordination with the lead teacher.

## ORDER

1.    The DOE failed to provide FAPE for the 2004-2005 school year. The parent has established that the following is appropriate for the period September 1, 2004 through August 31, 2005.

   a)  45 hours of 1:1 ABA therapy hours per week;

   b)  10 hours of speech and language therapy per week;

   c)  3 hours of occupational therapy per week;

   d)  the required therapy services are to be provided on a 7 day- 52 week basis.

2.    The parent states that she has paid certain ABA therapy fees for services provided between September 1, 2004 and December 31, 2005. In addition, the parent

Case No. 58190

states that RSAs pursuant to the IEP were provided for ABA, speech and language, and occupational therapy hours and that RSAs for additional ABA hours have been provided. Accordingly,

a) The DOE shall reimburse the parent, upon submission of acceptable proof of payment and services rendered, for ABA services that were provided during the period September 1, 2004 through December 31, 2005, and paid for by the parent.

b) The DOE shall provide RSAs for ABA, speech and language, and occupational services actually provided through the date of this Order for which RSAs have not previously been issued and/or payment by the DOE or the parent made.

c) The DOE shall provide RSAs for therapy in accordance with the program specified above for the period from the date of this Order through August 31, 2005.

3.    The DOE shall reimburse the parent for all transportation costs to and from services for D and her parent at the current New York State rate upon the submission of documents supporting that claim required by the DOE.

4.    A properly constituted CSE shall convene and issue an IEP that reflects this Order.

5.    The parent may elect to substitute home program consultant hours for ABA therapy hours upon notice to the DOE.

July 26, 2005

JUDITH SCHNEIDER, ESQ.
Impartial Hearing Officer

Case No.  58190

---

## PLEASE TAKE NOTICE

Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.

"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed.  The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed.  If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b])  Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.

Directions and sample forms for filing an appeal are included with this decision.  Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.

Case No.  58190

---

## DOCUMENTATION ENTERED INTO RECORD ON APRIL 20, 2005

| | | |
|---|---|---|
| I | Request for Hearing, 1/10/05 | IHO |
| II | Notice of Appointment, 1/13/05 | " |
| 1 | Rationale for Home-based Services, 3/13/04 | Parent |
| 2 | RSA 2 Form, 4/4/04 | " |
| 3 | IEP, 5/12/04 | " |
| 4 | Prime Time for Kids Behavior Plan, 5/12/04 | " |
| 5 | Letter from Parent to Region 2, 5/17/04 | " |
| 6 | Letter from Gary Mayerson to CSE, 6/9/04 | " |
| 7 | Occupational Therapy Evaluation, 6/14/2004 | " |
| 8 | Letter from Parent to Region 2, 6/21/04 | " |
| 9 | Speech and Language Evaluation, August 2004 | " |
| 10 | Educational Progress Report, 8/12/04 | " |
| 11 | Letter from Parent to Region 2, 8/17/04 | " |
| 12 | Demand for Due Process, 8/22/04 | " |
| 13 | Observation of Proposed Placement | " |
| 14 | Prime Time for Kids letter to Chairperson, 5/12/04 | " |
| 15 | Carbone Clinic Report | " |
| 16 | Special Education Progress Report, February 2005 | " |
| 17 | OT Progress Report, 2/13/05 | " |
| 18 | Educational Progress Report, 2/9/05 | " |
| 19 | 2004-2005 Schedule | " |
| 20 | Carbone Clinic Progress Report | " |
| 21 | ABA Progress Charts | " |
| 22 | Kuhn's Speech Progress Report, February 2005 | " |

## DOCUMENTATION ENTERED INTO RECORD ON MAY 3, 2005

| | | |
|---|---|---|
| 23 | Occupational Therapy Progress Report, 2/18/05 | " |

## DOCUMENTATION ENTERED INTO RECORD AFTER HEARINGS

| | | |
|---|---|---|
| 24 | Stipulation re Additional Evidence, 6/9/05 | Parent |
| 25 | Spread Sheets and Invoices re Services provided | " |

# FINDINGS OF FACT AND DECISION

Case Number:    58191

NYS Case Identifier Number:  13136

Student's Name:    C█████ C███████

Date of Birth:    March 14, 1997

District:    11

Hearing Requested By:  Parent

Dates of Hearings:    April 20, 2005
May 10, 2005
May 11, 2005

Hearing Officer:    Judith Schneider, Esq.

Hearing Officer's Findings of Fact and Decision                                    1

Case No.  58191

---

## NAMES AND TITLES OF PERSONS WHO APPEARED ON APRIL 20, 2005

| Mother | | Parent |
|---|---|---|
| Christina Thivierge, Esq. | Attorney for Parent | " |
| Mariam Mahmood, Esq. | Agency Attorney | DOE |
| Mark Parent | Psychologist, CSE Dist. Repr. | " |

## NAMES AND TITLES OF PERSONS WHO APPEARED ON MAY 10, 2005

| Mother | | Parent |
|---|---|---|
| Christina Thivierge, Esq. | Attorney for Parent | " |
| Jean Marie Cova | ABA Therapist-Special Educator | " |
| Dr. Vincent Carbone (via telephone) | Director-Carbone Clinic | " |
| Mariam Mahmood, Esq. | Agency Attorney | DOE |

## NAMES AND TITLES OF PERSONS WHO APPEARED ON MAY 11, 2005

| Mother | | Parent |
|---|---|---|
| Christina Thivierge, Esq. | Attorney for Parent | " |
| Rachel Malloy (via telephone) | Occupational Therapist | " |
| Aimee M. Kuhn | Speech Pathologist | " |
| Mariam Mahmood, Esq. | Agency Attorney | DOE |

Case No. 58191

On April 20, May 10 and May 11, 2005, I conducted hearings pursuant to the Individuals with Disabilities Act ("IDEA"), 20 U.S.C. sections 1400 et seq. regarding the special education of G ("G" or "the student".)   The hearings were held at the Impartial Hearing Office, Department of Education of the City of New York ("DOE"), 2nd Floor, 131 Livingston Street, Brooklyn, NY.   The hearing was requested by the parent on January 10, 2005 (Exh. *I*).   I was appointed on January 11, 2005. (Exh. *II*)   Various adjournments and extensions of the decision date were granted at the request of the parties.   The final Post-hearing Memorandum ("Memorandum") was received by the Hearing Officer on July 13, 2005 and the record closed on that date.

## BACKGROUND

G is an eight-year old girl with a severe autism spectrum disorder.  (Tr. at 49-50, 167)  Her twin sister has the same disability. (Exh. *I*)  Autism was diagnosed at age 2.  (Tr. at 192)   G attended a state approved school ("the school") in the 2003-2004 school year for about 5 hours a day and received one to one services from a teacher's assistant throughout the day.  She also received an additional approximately 20 hours of ABA and speech and language at home.  In August 2003, the parent had consulted Dr. Vincent Carbone, thereafter G began receiving additional ABA services from the Carbone Clinic ("the Clinic") and his program began to be implemented in the home-based part of G's program.  Positive results were observed.  In about December 2003, attempts to transfer the program to the school were commenced but these efforts failed. (Tr. at 39)  G severely regressed during the 2003-2004 school year.  At IEP meetings in March and May 2004, the parent requested a home-based program.  The school's ABA Director and G's teacher agreed that a classroom environment was not appropriate for G and that she had regressed at the school. (Exh. 12 )   The IEP, however, recommended a New York State approved non-public school (day) (6:1:1) and speech and language (5:30:1), occupational therapy (4:30:1) and a crisis management para daily 1:1. (Exh. 3)

On May 17, 2004, the parent advised the DOE that she would implement a full home based program that included 1:1 ABA therapy, a supervisor/consultant for the home-based program, speech therapy and occupational therapy.   She stated that she

Case No.  58191

would seek to hold the DOE responsible financially.  (Exh. 4)    In August 2004, Dr. Vincent Carbone recommended that G receive a 45 hours a week ABA program, 5 hours a week of a home program consultant, 10 hours a week of speech and language therapy and 5  hours a week of occupational therapy.

A request for an impartial hearing was filed on August 22, 2004. (Exh. 10) Settlement of this matter was discussed but was not approved. (Exh. *I*)  On January 10, 2005, an impartial hearing was again requested.  (Exh. *I*)

Pursuant to the IEP, in the 2004-2005 school year the DOE has continued to provide 12 hours a week of ABA services, 2 ½ hours a week of speech and language therapy (5:30:1) and 2 hours a week of occupational therapy (5:30:1)    The parent alleges that these services were provided according to the school calendar and not on a 52 week basis. (Parent Memorandum at 2)    The DOE also provided an additional 15 hours of ABA services but only for the period from September 1, 2004 through December 31, 2004. (Parent Memorandum at 2-3)

In September 2004, the parent had increased the weekly services G was receiving to 45 hours of ABA services (divided between the home based and clinic programs) and 10 hours of speech and language.   G continued to receive two hours weekly of occupational therapy.   There have been no home-based program supervison/consultation hours provided. Such consultation to the home as has been provided was through the Carbone Clinic and was included in the ABA hours provided to it.

## POSITION OF THE PARTIES

The parent asserts that for the 2004-2005 school year the following is an appropriate program for G: 45 hours a week of (1:1) ABA services (15 hours a week through the Carbone Clinic and 30 hours a week in the home program); 5 hours a week of a home program consultant; 10 hours a week of (1:1) speech and language therapy; 3 hours a week of (1:1) occupational therapy; and all services to be provided on a 7 day a week 52 weeks a year basis from September 1, 2004 through August 31, 2005.   The

Case No. 58191

_____

parent seeks reimbursement or payment by the DOE, as appropriate, for services pursuant to the requested program received by G but not paid for by the DOE. The parent also seeks compensatory home consultant hours to be used over a two year period from the issuance of this decision. Reimbursement of transportation costs is also requested.

The DOE concedes that it did not offer G a "free and appropriate public education" ("FAPE") for the 2004-2005 school year. (Tr. at 15)  However, the DOE asserts that: the aggregate of 45 hours of ABA is excessive and not required to maintain G's progress; 5 hours of ABA home program consultant, to be commenced at a future date, is unnecessary and should be denied; and two hours of occupational therapy, which has been provided by the DOE, is appropriate and therefore the additional hour of occupational therapy sought by the parent should be denied. Further, the DOE asserts that reimbursement to the parent should be limited to the actual cost incurred by the parent.

## CASE PRESENTED BY THE DOE

The DOE's attorney conceded that the DOE did not offer FAPE for the 2004-2005 school year. (Tr. at 15)  No testimony was presented by the DOE and no evidence was submitted.  (Tr. at 14)

## CASE PRESENTED BY THE PARENT

Dr. Vincent Carbone testified that he is a Board Certified Behavior Analyst and has worked in the field of autism and behavioral analysis for almost 30 years. He is the Director of the Carbone Clinic ("the Clinic".) (Tr. 24)

He stated with regard to G that she began attending the Clinic in August 2003 but he was familiar with her needs prior to that based upon his consultant work at the school. (Tr. at 34-35, 38)  Parent concerns at that time included G's low acquisition rate of skills as well as severe problem behavior, in the form of self-stimulatory activity, which interfered with G's ability to learn. (Tr. at 35)  The Clinic administered an Assessment of

Basic Language and Learner Skills ("ABLLS")) which revealed that G's acquisition of skills was at an unsatisfactory low level and her rate of learning particularly slow and that she needed great emphasis on decreasing distractibility, inability to attend and non-functional behaviors. (Tr. at 37)   He concluded that G presented as a child who was particularly difficult to engage and teach and that the likelihood of a good outcome is reduced with that profile.  (Tr. at 38, 50)

In about August 2003, G began attending the Clinic.  In Winter 2004, the Clinic commenced training staff of the school in an effort to transfer some of the program to the school.  However, that was unsuccessful.  (Tr. at 39)

Dr. Carbone testified that the intensity level of G's interfering behaviors was "very, very high" and G could not be effectively taught with the number of hours provided by her program in the 2003-2004 school year.  He stated that her level of interfering behaviors "was almost continuous and made her unteachable."   (Tr. at 42) Since the school's program was not appropriate for G, he recommended using, with the coordination and help of the Clinic, an expanded home based program using procedures that had been found to be effective.   Further, he recommended that G spend at least 14-15 hours a week at the Clinic (about 3 hours per day, 5 days per week) in intensive instruction. (Tr. at 43)   He stated that there was "good coordination and good communication back and forth on home programming needs" and that the Clinic had also provided training. (Tr. at 43)

Dr. Carbone testified that G has shown substantial progress since September 2004 in the ability to understand commands and engage in conversation and in the reduction of problem behaviors. (Tr. at 45-52)  He stated that by February 2005 the level of problem behaviors was reduced by about 95% and that has had an "enormous impact" of the acquisition of target skills.    (Tr. at 44-52, 54-55) He stated that from February 2005 to the present G is gaining skills at the same rate as in the period from September 2004 to February 2005 and her problem behavior is at the same (reduced) level. (Tr. at 58)

With regard to his recommendation that a total of 45 hours of ABA services be provided and that five hours of supervision at home be provided, he testified that the level

Case No. 58191

recommended is consistent with the professional literature relating to the needs of children with autism who present with a behavior profile similar to G. He stated that based upon his assessment of G she needs a very high level of intense one-on-one instruction by a very skilled person under good supervisory conditions who are making decisions from day to day ...or it[is] unlikely that...she will attain reasonable educational benefit...the environment requires this level of intensity to be effective. (Tr. at 52-53) With regard to a possible 2 to 1 setting, Dr. Carbone testified that G would go back to very, very high rates of stereotypy, self-stimulatory behavior, would spend most of her time in none-functional activities and would experience a dramatic drop in her rate of acquisition. (Tr. at 53-54)

He stated that a higher level person than the provider ensures that there is not a drift in procedures and to propose possible solutions when difficulties arise. Further, someone who has the ability to analyze date and to make decisions based upon data is needed and "...generally the person delivering the service doesn't have all those...skills and...therefore, supervision is necessary." (Tr. 68-69) A Board Certified Behavior Analyst has competencies in those skills and has demonstrated competencies in monitoring and training staff in programs using behavior analytic principles. (Tr. at 70)

Jean Marie Cova testified that she is the home ABA program supervisor. She has 11 years experience working in the field of autism and is a DOE approved provider. (Tr. at 76-77) She began working with G when she was two years old. (Tr. at 78) She has been the lead teacher in G's home-based program for 5 ½ years. Ms. Cova testified that since September 2004, G has received about 30 hours a week of home ABA services. She provides direct ABA services to G as well as maintains the program as the lead teacher, makes up programming, looks over graphs, assesses what G has been doing and tries to make up different goals and, if appropriate, adapt the programming so that G can learn. (Tr. 79-80)

Ms. Cova stated that when the current program began in September 2004, G's numerous self-stimulatory behaviors and extensive scripting resulted in her having a very difficult time attending and focusing and "...we were really unable to teach any real

Hearing Officer's Findings of Fact and Decision                                    7

Case No. 58191

---

skills." (Tr. at 80-81)   She noted that at that time G could request only one item. (Tr. at

82)   In August 2004, G had some skills which she had had for a couple of years but was

not really progressing further. (Tr. 86-87)   By February 2005, G went up a year in her

development and is continuing to grow. (Tr. at 87)   Ms. Cova described substantial

improvement between August 2004 and the present time. (Tr. 89-97) She stated that G

had progressed from an about 2 year old level in most areas to about 3.6 to 5 ½ depending

on the area.   (Tr. 98-99)   With regard to stimming behavior, she stated that in August

2004 G would stim for almost the entire 2 ½ hour session but now, generally, stims for

about 5 minutes of it. (Tr. 100-101)

However, Ms. Cova continues to recommend the program requested by the parent

because although G has made good gains, when left alone without therapy G will often

engage in self-stimulatory activity and scripting.   G has difficulty unless someone is

working with her.   (Tr. at 100, 103-104)   Ms. Cova testified as to substantial regression

with even a short break from the therapies and stated that after a week with no therapy

due to illness, the therapists could not work on programs for an additional two weeks

because G's behaviors intervened and had to be addressed.   She also stated that G's

requesting skills regressed. (Tr. at 102)   For this reason a continuous program 7 days a

week for 52 weeks is necessary. (Tr. at 107-108)

Ms. Aimee Kuhn testified that she has worked with autistic children for eight

years as a speech and language pathologist and previously taught autistic children as a one

to one special education teacher.   She is currently a DOE approved provider. (Tr. at 164-

165)   She commenced working with G, in February 2004 initially for about an hour a

week.   Through RSAs provided by the DOE to compensate for failure to provide IEP

required related services earlier in the year, by June 2004 G was receiving about five

hours of speech therapy a week. (Tr. at 165-166. Exh. 2)   In September 2004, G began

receiving 10 hours a week. (Tr. at 190)

When the parent first came to her, the student was seven years old and functioning

at about a one year age range with very, very low communication.   Ms. Kuhn stated that

she believed that G was the hardest child she ever had to work with and that she had

deficits in each of the major areas of speech. (Tr. at 166-167, 175) When evaluated in August 2004, she place in the 4th percentile of the articulation test when to be in the normal range required the 80th percentile. Her results in the intelligibility and phonology tests were also very deficient and she was unable to get G to participate in the remaining three tests and was unable to complete the language assessment. (Tr. at 168-169, Exh. 22) Ms. Kuhn stated that in August 2004, G was probably at about a two-year old level. At this time (May 2005) she is probably at three to three-and-a-half. (Tr. at 183-184)

Ms. Kuhn stated that daily sessions are appropriate because G needs to build up the muscles of the mouth and surrounding areas and that as a result of the therapy G has made progress in articulation and eating and in phonological processes. (Tr. at 172-174) She stated that G needs constant reinforcement of speech each day. (Tr. at 184-185) Further, she noted that after a week when, due to illness, G had only 2 or 3 hours of speech in the week, there had been definite regression and that even after two weeks the prior level was not reached. (Tr. at 186) With regard to her recommendation that 10 hours per week is appropriate, she stated that in the Summer of 205 she concluded that 5 hours was insufficient and, after discussion with the team of how G worked, decided on 10 hours and G has been doing "great." (Tr. at 186)

Ms. Rachel Malloy testified that she is DOE approved provider of occupational therapy and has a Masters degree in occupational therapy with a concentration of pediatrics and has worked with children on the autism spectrum for 6 ½ years. (Tr. at 140-141) She stated that she has provided the 2 hours per week services principally in 30 minute segments, as specified in the IEP. Each of those segments required substantial lost time at the beginning of each session to get G to regulate herself. (Tr. at 154) However, Ms. Molloy concluded that two 60 minute sessions per week would not be sufficient and that three are required due to G's sensory deficits and that 3   60 minute sessions was appropriate to make gains. (Tr. at 150) She stated that G has made slow, steady progress since February 2005. (Tr. at 159-162) Further, she described severe regression when sessions are missed and stated that there is an increase in scripting,

Case No. 58191

---

abnormal movement and hyperactivity and that to takes time to get the activity and regulation under control so that progress can be made. (Tr. 150-152)

G's mother testified that as to the progress made since the program began and attributed it to the consistency provided and the controlled environment. (Tr. at 200-201) She testified as to the importance of routine and a substantial regression over the 7 to 10 days in which G had limited therapy. She stated that G had become a "stimming mess" with poor language. (Tr. at 202)

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The legal standard applicable to a request for reimbursement for educational services is well established. Reimbursement is granted if: (1) the services offered by the Board of Education are inadequate or inappropriate; (2) the services selected by the parent are appropriate; and (3) equitable considerations support the parent's claim. (School Comm. of Burlington v. Department of Educ. of Mass., 471 U.S. 359 [1985])

The Board of Education bears the burden of demonstrating the appropriateness of the program recommended by its CSE. (M.S. v. Bd. of Educ. of the City of Yonkers, 231 F2d 96, 102 [2d Cir. 2000], Application of a Child Suspected of Having a Disability, Appeal No. 93-9) Here, the DOE has conceded that it did not offer FAPE.

When a public school system has failed to provide FAPE, the program chosen by the parent is "proper under the Act" if the education provided is "reasonably calculated to enable the child to receive educational benefits." (Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 [1993]) The parent bears the burden of proof with regard to the services obtained by the parent for the student. (Application of a Child with a Disability, Appeal No. 94-29) The parent asserts that G requires, on a 7 day-52 week basis, 45 hours (1:1) ABA, 5 hours home program supervision/consultation, 10 hours (1:1) speech and language therapy and three hours (1:1) occupational therapy. The program the parent provided thus far did not include the home-based supervision component and provided an aggregate of two hours of occupational therapy, one hour less than that requested.

Case No. 58191

The parent's claim that G has made substantial progress since September 2004 is supported by credible testimony and evidence. The DOE has not contested or rebutted that claim. However, the DOE argues that 45 weekly hours of ABA is excessive, that home program consultation is unnecessary and that occupational therapy of two hours, in 60 minute sessions, is appropriate. (The DOE has not contested the provision of 10 hours of speech and language. Further, the credible evidence shows that requested speech and language service is appropriate in view of G's deficits, the progress that she has made since it was commenced and the regression demonstrated when that therapy was reduced.)

With regard to the number of weekly ABA hours that is appropriate to provide educational benefits, Dr. Carbone testified that G required a high level of intensity of one to one instruction. He stated that, based upon the professional literature and his judgment, although 40 hours could constitute the required "high level of intensity," 45 hours could also conform to that standard. (Tr. at 60) He stated that the term "high" is relative to the needs and he concluded that for G, 45 hours is the appropriate level. (Tr. at 60) Further, he testified that the appropriate level of benefit to G did not occur until the proper level of intensity was provided commencing in September 2004. (Tr. at 60-61) Ms. Cova testified that G has difficulty when left alone, often engaging in self-stimulatory activity and scripting. (Tr. 100, 103-104) The DOE has presented no evidence to rebut the credible testimony of the parent's witnesses. The evidence shows that the parent's provision of an aggregate of 45 hours of ABA for G for the 2004-2005 school year is not excessive and is appropriate.

With regard to the parent's request for 5 hour home program supervision, Dr. Carbone acknowledged that without supervision services G has made good change and the program implemented now works to her benefit. (Tr. at 69) He stated that a supervisor ensures that there is no drift, proposes solutions, analyzes data and makes decisions based upon data, and trains staff and that *generally* the service deliverer does not have those skills. (Tr. at 68-69) However, he testified as to his on-going coordination with and supervision of the home program. (Tr. at 75) Further, Ms. Cova

Case No. 58191

---

testified that Dr. Carbone talks to the therapists about what they are doing and what they should be doing next, that she consults him concerning problems, that the Clinic comes up with the goals and the home-program follows through, that Clinic staff assess G monthly to determine the goals that should be worked on. (Tr. at 106, 121, 127) Further, Ms. Cova testified that she looks over the graphs and date prepared by the home program therapists each week, assesses the program and rewrites it if necessary. (Tr. at 106-107) Accordingly, the evidence shows that Ms. Cova performs many of the supervision tasks and that she and the other therapists have routine access to Dr. Carbone and Clinic staff when problems arise. Ms. Cova testified that a home program supervisor would permit direct observation of the interactions of the therapists and G and could focus only on the most difficult problems. (Tr. at 126-128, 134) However, the DOE is not required to provide an optimal program when it has failed to provide FAPE. The evidence shows that a requirement of an additional 5 hours of home consultant services is not reasonable or necessary in the circumstances of the instant matter. (Application of a Child with a Disability, Appeal No. 02-105)

The DOE also objects the addition of another hour of occupational therapy and asserts that two 60 minute sessions are sufficient. However, Ms. Malloy has testified as to G's sensory deficits that interfere with skill acquisition. (Tr. at 142-143, 151) She stated that a longer session is required because of time lost due to G's significant need to self regulate at the commencement of each session and that three sessions are necessary to provide carryover to the home and throughout the week in view of G's many sensory deficits. (Tr. at 151, 153, 155-156)   The credible testimony of the parent's witness has not been rebutted by the DOE. The evidence shows that the provision of three 60 minute sessions is appropriate.

Further, the credible and unrebutted testimony concerning the adverse effect of a break of even a week in the schedule of services provided demonstrates that the G's program should provided on a 7 day-52 week basis.

Case No. 58191

_____

Accordingly, the burden of the parent to show that the program selected for the student was appropriate has been met except with regard to the request for 5 hours of home program consultant time.

Although acknowledging that the DOE has provided certain ABA, speech and language, and occupational therapy services, it is asserted that provision of those services followed the school calendar. The parent requests compensatory educational services for services not provided during holidays and breaks. The parent also requests compensatory occupational therapy hours for the additional hour provided. Compensatory educational services in this matter are denied. The requested hours are a small part of a comprehensive program and therefore the deprivation is limited and may be made up through the provision of additional services in the future if necessary. (Application of a Child With a Disability), Appeal No. 02-042)

**EQUITABLE CONSIDERATIONS**

Credible uncontested evidence demonstrates that the parent attended and participated in each IEP meeting, cooperated with CSE in the evaluation and preparation of G's IEP and visited schools suggested, although not offered, by the DOE. There is no dispute that proper notice was given concerning the parent's objections to IEP and her requests. Accordingly, the equities favor the parent in connection with the program requested except with regard to the 5 hour home program consultant. Supervisory services reasonably calculated to enable to G to receive educational benefit were provided through the Carbone Clinic in coordination with the lead teacher.

# ORDER

1.    The DOE failed to provide FAPE for the 2004-2005 school year. The parent has established that the following is appropriate for the period September 1, 2004 through August 31, 2005.

   a) 45 hours of 1:1 ABA therapy hours per week;

   b) 10 hours of speech and language therapy per week;

Case No. 58191

c) 3 hours of occupational therapy per week;

d) the required therapy services are to be provided on a 7 day- 52 week basis.

2.      The parent states that she has paid certain ABA therapy fees for services provided between September 1, 2004 and December 31, 2005. In addition, the parent states that RSAs pursuant to the IEP were provided for ABA, speech and language, and occupational therapy hours and that RSAs for additional ABA hours have been provided. Accordingly,

a) The DOE shall reimburse the parent, upon submission of acceptable proof of payment and services rendered, for ABA services that were provided during the period September 1, 2004 through December 31, 2005, and paid for by the parent.

b) The DOE shall provide RSAs for ABA, speech and language, and occupational services actually provided through the date of this Order for which RSAs have not previously been issued and/or payment by the DOE or the parent made.

c) The DOE shall provide RSAs for therapy in accordance with the program specified above for the period from the date of this Order through August 31, 2005.

3.      The DOE shall reimburse the parent for all transportation costs to and from services for G and her parent at the current New York State rate upon the submission of documents supporting that claim required by the DOE.

4.      A properly constituted CSE shall convene and issue an IEP that reflects this Order.

5.      The parent may elect to substitute home program consultant hours for ABA therapy hours upon notice to the DOE.

July 26, 2005

JUDITH SCHNEIDER, ESQ.
Impartial Hearing Officer

Case No.  58191

_____

**PLEASE TAKE NOTICE**

Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.

"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed.  The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed.  If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b])  Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.

Directions and sample forms for filing an appeal are included with this decision.  Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.

Case No.  58191

---

## DOCUMENTATION ENTERED INTO RECORD ON MAY 10, 2005

| | | |
|---|---|---|
| 1 | Rationale for Home Based Program, 3/13/04 | Parent |
| 2 | RSA 2 Form, 4/4/04 | " |
| 3 | IEP, 5/12/04 | " |
| 4 | Letter to Chairperson, 5/17/04 | " |
| 5 | Letter from Parent to Region 2, 5/17/04 | ' |
| 6 | Letter from Gary Mayerson to CSE, 6/9/04 | " |
| 7 | Occupational Therapy Evaluation, 6/14/04 | " |
| 8 | Educational Progress Report, 8/12/04 | " |
| 9 | Letter from Parent to Region 2, 8/17/04 | " |
| 10 | Demand for Due Process, 8/22/04 | " |
| 11 | Observation of Proposed Placement, undated | " |
| 12 | Prime Time for Kids letter to Chairperson, 5/12/04 | " |
| 13 | Carbone Clinic Report, undated | " |
| 14 | Occupational Therapy Progress Report, 2/9/05 | " |
| 15 | Kuhn Speech Progress Report, February 2005 | " |
| 16 | Educational Progress Report, 2/9/05 | " |
| 17 | Special Education Progress Report | " |
| 18 | NYC  Occupational Therapy Progress Report, 2/18/05 | " |
| 19 | ABA Progress Report, multiple dates | " |
| 20 | Carbone Clinic Progress Report, not dated | " |
| 21 | Schedule 2004-2005, not dated | " |
| 22 | Kuhn Speech and Language Progress Report, August 2004 | " |

## DOCUMENTATION ENTERED INTO THE RECORD AFTER THE HEARINGS

| | | |
|---|---|---|
| I | Request for hearing | IHO |
| II | Letter Appointing  IHO | " |
| 23 | Spread Sheets and Invoices re services provided | Parent |

# **FINDINGS OF FACT AND DECISION**

Case Number:                    101832

Student's Name:                 G████ C██████

Date of Birth:                  March 14, 1997

District:                       11

Hearing Requested By:           Parent

Date of Hearing:                October 7, 2005
                                April 27, 2006
                                April 28, 2006

Hearing Officer:                Marymargaret Keniry, Esq.

Case No.   101832

NAMES AND TITLES OF PERSONS WHO APPEARED OCTOBER 7, 2005

| | | |
|---|---|---|
| Anna Boksenbaum | Law Graduate, Mayerson & Associates | Parent |
| Monique Gullo | Chairperson Designee, District 11 | Department of Education |

NAMES AND TITLES OF PERSONS WHO APPEARED APRIL 27, 2006

| | | |
|---|---|---|
| Christina Thivierye | Law Graduate, Mayerson & Associates | Parent |
| ▮▮▮C▮▮▮▮ | Mother | |
| Monique Gullo | Chairperson Designee, District 11 | Department of Education |
| Elena Talamo Mirabal | Autism Program, Assistant Principal | Department of Education |
| Dana Paul | Autism Program Teacher | Department of Education |
| Vincent Carbone | Director, Carbone Clinic | Department of Education |

NAMES AND TITLES OF PERSONS WHO APPEARED APRIL 28, 2006

| | | |
|---|---|---|
| Christina Thivierye | Law Graduate, Mayerson & Associates | Parent |
| ▮▮▮C▮▮▮▮ | Mother | |
| Gina Zecchin | Assistant Director, Carbone Clinic | Parent |
| Jean Marie Cova | Supervisor of Home Program | Parent |
| Aimee Kuhn | Pathologist | Parent |
| Monique Gullo | Chairperson Designee, District 11 | Department of Education |

Case No.   101832

On April 27 and 28, 2006 I conducted an impartial hearing pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 USC 1400 et seq regarding the special education program of G. ("G." or "the student").   A hearing on pendency was conducted on October 7, 2005.

BACKGROUND

The hearing was held pursuant to a request by the parent of the student, G. for reimbursement of costs of tuition and services provided to G.  The student, G., is a nine year old girl with autism.

Pre-hearing motions

Recusal

The Department of Education ("DOE") made a motion for the hearing officer to recuse on the basis of 'cognitive dissonance' relating to the hearing officer's appointment to preside over a separate hearing brought by G's parent with respect to the special education program of G's twin sister.   I have adopt the reasoning advanced by G's attorney with respect to this motion and have denied this motion.

"Tom F."

The DOE also made a motion at hearing that the parent's claim be denied on the basis of the a court decision "Tom F." which interpreted federal statute 20 U.S.C. Section 1412 [a]10(C) ii with respect to whether or not a parent is entitled to reimbursement for tuition paid to a private school when the student has never attended public school.  In the present case, the student has in the past attended public school, the parent has cooperated at all times with the district in its procedures for determining and recommending a program for her daughter, and there is no basis in law to preclude the parent's claim on this basis. (See, Application of a Child with a Disability, Appeal No. 06-021).

DOE Request to further brief the court

I note as a procedural matter that the decision timeline was duly extended at the request of the DOE to consult with counsel and submit legal memoranda in support of various legal and evidentiary issues raised at hearing, however no further briefs have been submitted by the office of legal counsel for the district. At this time the record must be closed.

FINDINGS OF FACT AND CONCLUSIONS OF LAW

A parent is entitled to reimbursement for educational services provided to a student if the district failed to offer and/or provide an appropriate program for the student, the educational services selected by the parent are appropriate and where equitable considerations support the parent's claim for reimbursement.

The purpose of the IDEA is to ensure that children with disabilities have available to them a free, appropriate public education, or "FAPE". 20 USC Section 1400 [d]1[A]. A FAPE consists of specialized education and related services embodied in an Individualized Educational Program, or "IEP". 34 CFR Section 300.13. A district bears the burden of demonstrating the appropriateness of the program recommended by its Committee on Special Education ("CSE") (M.S. v. Bd of Educ. of the City Sch. Dist. of Yonkers, 231 F2d 96, 102 [2nd Cir. 2000].

To meet its burden of showing that it provided a FAPE to an individual child, a district must show that it complied with the procedural requirements set forth in IDEA in developing a program of special education for a student and that the IEP developed through the IDEA's procedures is reasonably calculated to enable the child to receive educational benefits (Bd. of Educ . v. Rowley, 458 US 176, 206-207 [1982].

An appropriate program begins with an IEP which accurately reflects the results of evaluations to identify the student's needs, establishes annual goals and short term instructional objectives related to those needs, and provides for the use of appropriate special educational services (Application of a Child with a Disability, Appeal No. 01-105; Application of a Child Suspected of Having a Disability, Appeal No. 93-9).

In this case, no behavioral plan was developed by the DOE for inclusion in the IEP. (See, IEP of June 28, 2005, entered into evidence as Parent's Exhibit K, DOE's Exhibit 3). Because the overwhelming evidence indicates that the student's disability and core deficits are behavioral in nature, this omission invalidates the IEP.

The June 28, 2005 IEP made a program recommendation for G. of a special class for children with autism in a special school, 15 hours per week of "Applied Behavioral Analysis ("ABA") methodology at home". Based on the documentary evidence and testimony presented concerning the CSE's process for formulating this IEP, it is not possible to determine what informed the CSE's determination that the service at this level

and type was appropriate for this particular student, given her unique needs in the area of behavior known to the CSE at the time of the completion of the IEP.  The CSE at that time took steps to observe the student at her program, and had access to her records and updated evaluations, however, the ABA recommendation is not tied to any particular behavioral goals or objectives or rationale which reflects that it considered the type and degree of interfering behaviors which the student struggles with.  The IEP designated verbal expression and cognition as G.'s core deficits.  It further stated that she was able to transition easily from activity to activity with minimal prompting.  These descriptors do not seem to adequately capture G.'s particular behavioral needs in light of the records and observation of G. that available to the CSE.  The evidence presented indicates that while G. does struggle with deficits in verbal expression and cognition, centrally the number and degree of interfering behaviors which typically manifest for G. are the core concern with respect to a program of special education. (See, Exhibits L, M, N, O, P, Q, R).

Based on ongoing interaction with G. and her family over the years since the CSE recommended early intervention and preschool programs, the CSE should have reasonably been expected to address the question as to whether or not G.'s behaviors would preclude her ability to interact and benefit within a small class setting. The evaluations available at that time would have established that at that time the student was not ready or able to so benefit, thus the IEP cannot be said to meaningfully tailor a special education program in the context of G.'s unique deficits and abilities.

The next inquiry which must be made is whether the parent's choice of educational program for the student can be considered appropriate or reasonably calculated to confer educational benefit.

G.'s therapists testified as to evaluations and assessment made on an ongoing basis to precisely target the behaviors most in need of decreasing, and her therapists were all well-qualified to make these professional recommendations, so the record does reflect that the program was reasonably calculated to confer educational benefit.

At hearing, the DOE raised the issue of whether or not G. had made adequate progress in the program chosen for her by the parent.  The record reflects that G. had made progress in several areas, and there was no indication that she had regressed in the current setting. (See, Exhibits B, C, D, E, F, N, O, P, R).

Case No.    101832

The final inquiry to be determined is whether or not equitable considerations warrant reimbursement. Nothing in the record suggests that the parent was less than entirely cooperative and responsive to the CSE in her involvement in the processes of evaluation and developing the IEP. (See, Transcript, Testimony of Ms. C.)

The DOE contends that the tuition and fees for the program chosen for G by her parent are unreasonable. At hearing, the DOE sought to introduce documentary evidence of the cost of some private school and residential school placements as support for the argument that the costs were not reasonable. The parent's attorney, in reply, contended that the student's service providers' fee structures were within the range of fees typically approved and paid by the DOE.

In Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 (1993), the United States Supreme Court stated in its decision,

"Finally, we note that, once a court holds that a public placement violated the IDEA, it is authorized to 'grant such relief as the court determines is appropriate…Under this provision, 'equitable considerations are relevant in fashioning relief'…and the court enjoys 'broad discretion' in so doing…Courts fashioning discretionary equitable relief under IDEA must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required. Total reimbursement will not be appropriate if the court determines that the cost of the private education was unreasonable."

I find as a discretionary matter in formulating equitable relief in this case that the practitioners' rates of compensation of $90 per hour are not unreasonable and are entirely consistent with rates of compensation set by the DOE generally.

Case No.    101832

_____

ORDER

1.  RSAs previously issued for payment for educational services rendered for the
    student G. for the 2005-2006 school year on a 12 month, 7 day, 52 week cycle
    should continue as follows:

    45 hours of 1:1 combined home and clinic based ABA therapy weekly
    with supervision;

    10 hours of 1:1 speech and language therapy weekly

    3 hours of 1:1 occupational therapy weekly

    Transportation costs

    It is so ordered.

Dated:  July 31, 2006

MARYMARGARET KENIRY, ESQ.
Impartial Hearing Officer

MK:nn


**PLEASE TAKE NOTICE**

**Within 35 days of the date of this decision, the parent and/or the New York
City Department of Education has a right to appeal the decision to the State Review
Officer of the New York State Education Department under Section 4404 of the
Education Law and the Individuals with Disabilities Education Act.**

**"The notice of intention to seek review shall be served upon the school
district not less than 10 days before service of a copy of the petition for review upon
such school district, and within 25 days from the date of the decision sought to be
reviewed. The petition for review shall be served upon the school district within 35
days from the date of the decision sought to be reviewed. If the decision has been
served by mail upon petitioner, the date of mailing and the four days subsequent
thereto shall be excluded in computing the 25- or 35-day period."
(8NYCRR279.2[b]) Failure to file the notice of intention to seek review is a waiver
of the right to appeal this decision.**

**Directions and sample forms for filing an appeal are included with this
decision. Directions and forms can also be found in the Office of State Review
website: www.sro.nysed.gov/appeals.htm.**

Case No.    101832

## DOCUMENTATION ENTERED INTO RECORD APRIL 27, 2006

| | | |
|---|---|---|
| A. | Demand for Due Process, 9/13/05, 4 pp. | Parent |
| B. | Carbone Clinic Report, 12/19/05, 19 pp. | Parent |
| C. | OT Progress Report, 12/19/05, 2 pp. | Parent |
| D. | Educational Update, 12/15/05, 5 pp. | Parent |
| E. | Home Program Graphs, 12/15/05, 5 pp. | Parent |
| F. | Speech and Language Progress Update, 12/05, 5 pp. | Parent |
| G. | Interim Order of Pendency, 10/7/05, 6 pp. | Parent |
| H. | Physical therapy Evaluation, 9/22/05, 3 pp. | Parent |
| I. | Educational Annual Evaluation, 8/25/05, 4 pp. | Parent |
| J. | Letter from Parent, 7/21/05, 1 p. | Parent |
| K. | IEP, 6/28/05, 23 pp. | Parent |
| 1. | Psycho-educational Evaluation, 5 pp. | Department of Education |
| 2. | Social History Update, 2 pp. | Department of Education |
| 3. | IEP, 24 pp. | Department of Education |
| 4. | Adaptive Behavior Scales, 8 pp. | Department of Education |
| 5. | Consent for Test, 1 p. | Department of Education |
| 6. | Omitted by DOE | |
| 7. | Omitted by DOE | |
| 8. | Speech and Language Report, 5 pp. | Department of Education |
| 9. | Education al Progress Report, 6 pp. | Department of Education |
| 10. | Physical therapy Note, 1 p. | Department of Education |
| 11. | Report from Clinic, 12 pp. | Department of Education |

Case No.    101832

| 12. | Contact Sheet, 7 pp. | Department of Education |
| 13. | M-2, 2 pp. | Department of Education |
| 14. | M-2, 1 p. | Department of Education |
| 15. | Request for Physical Exam, 1 p. | Department of Education |
| 16-33 | 16 through 33 Daily Date Sheets | Department of Education |
| 34 | Schedule, 1 p. | Department of Education |
| 35. | Class Reports, 2 pp. | Department of Education |
| 36. | C-10 Final Notice, 1 p. | Department of Education |
| 37. | C-10 Final Notice, 1 p. | Department of Education |
| 38. | Request for Physical Exam, 2 pp. | Department of Education |
| 39. | Autism Methods, 2 pp. | Department of Education |
| 40. | Autism Behavioral Analysis, 2 pp. | Department of Education |
| 41. | Autism TEACH, 2 pp. | Department of Education |
| 42. | Miller Method, 2 pp. | Department of Education |
| 43. | Letter Michele Beatty, 1 p. | Department of Education |
| 44. | Tom F., 1 p. | Department of Education |
| 45. | Letter from Michele Beatty, 1 p. | Department of Education |
| 46. | C-10, 1 p. | Department of Education |
| 47. | Letter from District Rep., 1 p. | Department of Education |
| 48. | Final Notice of Recommendation, 2 pp. | Department of Education |
| 49. | RSA, 2 pp. | Department of Education |
| 50. | RSA, 2 pp. | Department of Education |
| 51. | RSA, 2 pp. | Department of Education |

# **FINDINGS OF FACT AND DECISION**

|  |  |
|---|---|
| Case Number: | 101833 |
| NYS Case ID No.: | 16549 |
| Student's Name: | D█████ C█████ |
| Date of Birth: | March 14, 1997 |
| District: | 11 |
| Hearing Requested By: | Parent |
| Dates of Hearing: | October 7, 2005 |
|  | April 24, 2006 |
|  | April 25, 2006 |
|  | May 11, 2006 |
|  | May 23, 2006 |
|  | June 13, 2006 |
| Hearing Officer: | Marymargaret Keniry, Esq. |

Case No.  101833

---

### NAMES AND TITLES OF PERSONS WHO APPEARED OCTOBER 7, 2005

| | | |
|---|---|---|
| Anna Boksenbaum | Law Graduate, Mayerson & Associates | Parent |
| Monique Gullo | Chairperson Designee, CSE District 11 | Department of Education |

### NAMES AND TITLES OF PERSONS WHO APPEARED APRIL 24, 2006

| | | |
|---|---|---|
| Christina Thivierge | Attorney, Mayerson & Associates | Parent |
| ██████ C███ | | Parent |
| Monique Gullo | Chairperson Designee, CSE District 11 | Department of Education |

### NAMES AND TITLES OF PERSONS WHO APPEARED APRIL 25, 2006

| | | |
|---|---|---|
| Christina Thivierge | Attorney, Mayerson & Associates | Parent |
| Monique Gullo | Chairperson Designee, CSE District 11 | Department of Education |

### NAMES AND TITLES OF PERSONS WHO APPEARED MAY 11, 2006

| | | |
|---|---|---|
| ██████ C███ | Parent | |
| Monique Gullo | Chairperson Designee, CSE District 11 | Department of Education |
| Elena Talamo Mirabal (Via Telephone) | Assistant Principal, PS 176 | Department of Education |
| Kevin Feeney (Via Telephone) | Teacher, PS 176 | Department of Education |

### NAMES AND TITLES OF PERSONS WHO APPEARED MAY 23, 2006

| | | |
|---|---|---|
| Christina Thivierge | Attorney, Mayerson & Associates | Parent |
| Aimee Kuhn (Via Telephone) | Speech/Language Pathologist | Parent |

Case No.  101833

_____

| Vincent Carbone (Via Telephone) | Director, Carbone Clinic | Parent |
| Gina Zecchin (Via Telephone) | Teacher | Parent |
| Jean Marie Cova (Via Telephone) | AVA Teacher | Parent |
| Monique Gullo | Chairperson Designee, CSE District 11 | Department of Education |

## NAMES AND TITLES OF PERSONS WHO APPEARED JUNE 13, 2006

| Christina Thivierge | Attorney, Mayerson & Associates | Parent |
| Christine Fiorile | Legal Intern | |
| Monique Gullo | Chairperson Designee, CSE District 11 | Department of Education |

Case No. 101833

I conducted an impartial hearing pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1400 et seq regarding the special education program of D. ("D" or "the student") for school year 2005-2006.

Background

The hearing was held pursuant to a request by the parent of D. for reimbursement of costs of tuition and services provided to D. through a special education program chosen for D. by her parents after the New York City Department of Education ("DOE") offered a special education program at an annual review held in June, 2005. D is a nine year old girl with autism. Completion of this hearing required that the parties attend five hearing dates. My findings of fact and conclusions of law are based on a review of the transcript of testimony and documents received into evidence over the course of the five hearing dates.

## PRE-HEARING MOTIONS

Recusal

The DOE made a motion for the hearing officer to recuse on the basis of 'cognitive dissonance' relating to the hearing officer's appointment to preside over a separate hearing brought by D's parent with respect to the special education program of D's twin sister. In denying this motion, I have adopted as my basis the reasoning advanced by D's attorney, specifically, that there is no basis in law for a motion for recusal on these grounds.

"Tom F."

The DOE also made a motion at hearing, that the parent's claim should be denied on the basis of the a court decision "Tom F.", which interpreted federal statute 20 U.S.C. Section 1412 [a]10(C) ii, with respect to whether or not a parent is entitled to reimbursement for tuition paid to a private school when the student has never attended public school. In the present case, the student has in the past attended public school placements, the parent has cooperated at all times with the district in its procedures for determining and recommending a program for her daughter, D., and, recent decisions of the decisions of the Office of State Review do not support the DOE's motion to preclude

Case No.  101833

the parent's claim for reimbursement. (See, <u>Application of a Child with a Disability</u>, Appeal No. 06-021).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A parent is entitled to reimbursement for educational services provided to a student if the district failed to offer and/or provide an appropriate program for the student, the educational services selected by the parent are appropriate and where equitable considerations support the parent's claim for reimbursement.

The purpose of the IDEA is to ensure that children with disabilities have available to them a free, appropriate public education, or "FAPE".  (20 USC Section 1400 [d]1[A]).  A FAPE consists of specialized education and related services embodied in an Individualized Educational Plan, or "IEP".  (34 CFR Section 300.13).  A district bears the burden of demonstrating the appropriateness of the program recommended by its CSE (<u>M.S. v. Bd of Educ. of the City Sch. Dist. of Yonkers</u>, 231 F2d 96, 102 [2nd Cir. 2000]).

To meet its burden of showing that it provided a FAPE to an individual child, a district must show that it complied with the procedural requirements set forth in IDEA in developing a program of special education for a student and that the IEP developed through the IDEA's procedures is reasonably calculated to enable the child to receive educational benefits. (<u>Bd. of Educ . v. Rowley</u>, 458 US 176, 206-207 [1982]).

An appropriate program begins with an IEP which accurately reflects the results of evaluations to identify the student's needs, establishes annual goals and short term instructional objectives related to those needs, and provides for the use of appropriate special educational services (<u>Application of a</u> <u>Child with a Disability</u>, Appeal No. 01-105; <u>Application of a Child Suspected of Having a Disability, Appeal No. 93-9).</u>

In the present case, although a hearing officer ordered that the DOE convene a properly constituted CSE to conform D.'s IEP for the 2005-2006 school year consistent with the hearing officer's order which found that the previous school year's recommendation was inappropriate, the CSE failed to so convene as directed by the hearing officer. (Parent's Exhibit N, Testimony of Ms. C).

Case No. 101833

Instead, the CSE chose to reconvene, twice, and issue IEPs substantially consistent with previous IEP recommendations without evaluative support establishing that the child was able to benefit from a small class despite the number and magnitude of self-stimulatory behaviors, some injurious, which was well established in the evaluations before the CSE as well as accessible through the parent's cooperation and through discussion with the student's therapists and the clinicians who worked with her. The IEP at issue in this case set some objectives in the area of behavioral management through a behavioral plan, however, no rationale is set forth for the decision to recommend a reduction in the level of the related service which had been addressing D.'s self-stimulatory behaviors on an incremental, systematic, and monitored format.

At hearing, the DOE introduced testimony that there are different methodologies for addressing self-stimulatory behaviors and increase social participation and learning, however, there was no testimony offered that established that the CSE, at the time of convening, considered these specific methodologies with this student's needs in mind and either rejected or embraced any or all of these methodologies in formulating a recommendation for a program of special education. The IEP itself lists no rationale on the page intended for such descriptors and information, for rejecting the previous program and substituting the recommendation of the CSE at the altered service levels and in the context of a small class.

The student and her family had a history of cooperative interaction over the years beginning with early intervention and preschool programs, so it is a logical expectation that the CSE would, for this school year, explicitly address the question as to whether or not the level and intensity and dangerousness of D.'s self-stimulatory behaviors would preclude her ability to interact and benefit within a small class setting. Without a record that connects this CSE's deliberations to the data which was available to them and reviewed by them in recommending a program, the IEP does not meaningfully tailor a program in the context of D.'s unique deficits and abilities.

Hearing Officer's Findings of Fact and Decision                                        6

Case No.  101833

---

The next inquiry which must be made is whether the parent's choice of educational program for the student can be considered appropriate, or reasonably calculated to confer educational benefit.

D.'s therapists testified as to evaluations and assessment made on an ongoing basis to precisely target the behaviors most in need of decreasing, and her therapists were all well-qualified to make these professional recommendations, so the record does reflect that the program was reasonably calculated to confer educational benefit.

The final inquiry to be determined is whether or not equitable considerations warrant reimbursement.  Nothing in the record suggests that the parent was less than entirely cooperative and responsive to the CSE in her involvement in the processes of evaluation and developing the IEP (See, Transcript, Testimony of Ms. C.).

The DOE contends that the tuition and fees for the program chosen for G by her parent are unreasonable.  At hearing, the DOE sought to introduce documentary evidence of the cost of some private school and residential school placements as support for the argument that the costs were not reasonable.  The parent's attorney, in reply, contended that the student's service providers' fee structures were within the range of fees typically approved and paid by the DOE.

In Florence County Sch. Dist. Four v. Carter, 510 U.S. 7 (1993), the United States Supreme Court stated in its decision,

"Finally, we note that, once a court holds that a public placement violated the IDEA, it is authorized to 'grant such relief as the court determines is appropriate…Under this provision, 'equitable considerations are relevant in fashioning relief'…and the court enjoys 'broad discretion' in so doing…Courts fashioning discretionary equitable relief under IDEA must consider all relevant factors, including the appropriate and reasonable level of reimbursement that should be required.  Total reimbursement will not be appropriate if the court determines that the cost of the private education was unreasonable."

I find as a discretionary matter in formulating equitable relief in this case that the practitioners' rates of $90.00 per hour are not unreasonable per se.

Case No.  101833

---

**ORDER**

    1.    RSAs previously issued for payment for educational services rendered for the student D. for the 2005-2006 school year on a 12 month, 7 day, 52 week cycle should continue as follows:

        45 hours of 1:1 combined home and clinic based ABA therapy weekly
           with supervision;

        10 hours of 1:1 speech and language therapy weekly

        3 hours of 1:1 occupational therapy weekly

        Transportation costs

It is so ordered.

Dated:  August 9, 2006

                                *Marymargaret Keniry (DS)*
                            MARY MARGARET KENIRY, ESQ.
                            Impartial Hearing Officer

MK:ds

**PLEASE TAKE NOTICE**

    **Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.**

    **"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed. The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed. If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b]) Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.**

    **Directions and sample forms for filing an appeal are included with this decision. Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.**

Case No.  101833

## DOCUMENTATION ENTERED INTO RECORD OCTOBER 7, 2005

| A. | Hearing Request, 9/13/05, 4 pp. | Parent |
| B. | Findings of Fact and Decision, 7/26/05, 15 pp. | Parent |
| C. | IEP, 6/28/05, 22 pp. | Parent |

## DOCUMENTATION ENTERED INTO RECORD APRIL 24, 2006

| A. | Demand for Due Process, 9/13/05, 4 pp. | Parent |
| B. | Carbone Clinic, 12/19/05, 30 pp. | Parent |
| C. | Occupational Therapy Progress Report, 12/19/05, 2 pp. | Parent |
| D. | Home Program Cumulative Graphs, 12/15/05, 6 pp. | Parent |
| E. | Update, Home Program Educational Update, 12/15/05,  6 pp. | Parent |
| F. | Speech and Language Progress Update, 12/05, 4 pp. | Parent |
| G. | Interim Order of Pendency, 10/7/05, 6 pp. | Parent |
| H. | Occupational Therapy Evaluation, 9/22/05, 3 pp. | Parent |
| I. | Educational Annual Evaluation, 8/25/05, 4 pp. | Parent |
| J. | Speech Evaluation, 8/05, 8 pp. | Parent |
| K. | Parent Letter, 7/21/05, 1 p. | Parent |
| L | IEP, 6/28/05, 23 pp. | Parent |
| M. | Schedule, 2005-2006, 1 p. | Parent |
| N. | Findings of Fact Decision, April-May, 05, 16 pp. | Parent |

Case No.  101833

| | | |
|---|---|---|
| O. | Speech Evaluation, 5 pp. | Parent |
| P. | Occupational Therapy Evaluation, 2 pp. | Parent |
| Q. | Graphs, 6 pp. | Parent |
| R. | Update, 6 pp. | Parent |
| S. | Carbone Clinic, 3 pp. | Parent |
| T. | Progress Report, 5 pp. | Parent |
| U. | CD ROM, 2006 | Parent |
| 1. | Educational Progress Report, 2/9/05, 4 pp. | Department of Education |
| 2. | Speech & Language Progress Update, 2/05, 4 pp. | Department of Education |
| 3. | Social History Update, 12/19/05, 2 pp. | Department of Education |
| 4. | Occupational Therapy Note, 2/13/05, 1 p. | Department of Education |
| 5. | Letter from Mayerson & Associates, 9/13/05, 4 pp. | Department of Education |
| 6. | Consent for Test Assessments, 12/1/05, 1 p. | Department of Education |
| 7. | CSE Review IEP, 6/28/05, 23 pp. | Department of Education |
| 8. | C-10 Final Notice, 7/15/05, 1 p. | Department of Education |
| 9. | M-2, 6/1/05, 1 p. | Department of Education |
| 10. | M-2, 6/14/05, 1 p. | Department of Education |
| 11. | Request for Physical Exams, 5/10/05, 2 pp. | Department of Education |
| 12. | Contact Sheet, 1 p. | Department of Education |
| 13. | Autism Applied Behavior, 1/19/06, 2 pp. | Department of Education |
| 14. | Autism TEACH, 1/19/06, 2 pp. | Department of Education |
| 15. | Autism Miller Method, 1/19/06, 2 pp. | Department of Education |

Case No.  101833

---

| 16. | Psychoeducational  Report, 12/19/05, 4 pp. | Department of Education |
| 17. | Class Profile, 1/19/06, 2 pp. | Department of Education |
| 18. | Adaptive Behavioral Scale, 12/20/05, 8 pp. | Department of Education |
| 19. | Schedule, 12/21/05, 1 p. | Department of Education |
| 20. | Monthly Session Overview , 4/05, 2 pp. | Department of Education |
| 21. | Monthly Session Overview, 8/05, 2 pp. | Department of Education |
| 22. | Monthly Session Overview, 2/05, 2 pp, | Department of Education |
| 24. | Daily Data Sheet, 6/05, 4 pp. | Department of Education |
| 25. | Daily Data Sheet, 3/4/05, 1 p. | Department of Education |
| 26. | Daily Data Sheet, 1/21/05/2 pp, | Department of Education |
| 27. | Daily Data Sheet, 7/10/05, 2 pp. | Department of Education |
| 28. | Daily Data Sheet, 8/19/05, 2 pp. | Department of Education |
| 29. | Daily Data Sheet, 8/26/05, 2 pp. | Department of Education |
| 30. | Daily Data Sheet, 2/26/05, 2 pp. | Department of Education |
| 31. | Daily Data Sheet, 6/10/05, 2 pp. | Department of Education |
| 32. | Daily Data Sheet, 4/29/05, 2 pp. | Department of Education |
| 33. | Daily Data Sheet, 2/28, 2 pp. | Department of Education |
| 34. | Daily Data Sheet, 8/29/05, 2 pp. | Department of Education |
| 35. | Daily Data Sheet, 8/15/05, 2 pp. | Department of Education |
| 36. | Daily Data Sheet, 8/12/05, 2 pp. | Department of Education |
| 37. | Daily Data Sheet, 8/4/05. 2 pp. | Department of Education |
| 38. | Daily Data Sheet, 5/5/05, 2 pp. | Department of Education |

Case No.  101833

_____

| 39. | Daily Data Sheet, 5/3/05, 2 pp. | Department of Education |
|-----|----------------------------------|-------------------------|
| 40. | Daily Data Sheet, 3/31/05, 2 pp. | Department of Education |
| 41. | Daily Data Sheet, 3/19/05, 2 pp. | Department of Education |
| 42. | Daily Data Sheet, 2/12/05, 2 pp. | Department of Education |
| 43. | Daily Data Sheet, 2/9/05, 2 pp. | Department of Education |
| 44. | Daily Data Sheet, 1/29/05, 2 pp. | Department of Education |
| 45. | Daily Data Sheet, 4/16, 2 pp. | Department of Education |
| 46. | Daily Data Sheet, 3/5/05, 2 pp. | Department of Education |
| 47. | Daily Data Sheet, 1/24/05, 2 pp. | Department of Education |
| 49. | Daily Data Sheet, 4/18, 2 pp. | Department of Education |
| 50. | Daily Data Sheet, 8/20/05, 2 pp. | Department of Education |
| 51. | Daily Data Sheet, 8/6/05, 2 pp. | Department of Education |
| 52. | Daily Data Sheet, 8/4/05, 2 pp. | Department of Education |
| 53. | Daily Data Sheet, 7/30/05, 2 pp. | Department of Education |
| 54. | Daily Data Sheet, 7/20/05, 2 pp. | Department of Education |
| 55. | Daily Data Sheet, 7/18/05, 2 pp. | Department of Education |
| 56. | Occupational Therapy Report, 12/19/05, 2 pp. | Department of Education |
| 57. | Occupational Therapy Evaluation, 9/22/05, 2 pp. | Department of Education |
| 58. | Speech/Language Evaluation, 8/05, 3 pp. | Department of Education |
| 59. | Educational Annual Evaluation, 8/25/05, 4 pp. | Department of Education |
| 60. | Cumulative Graft, 12/15/05, 6 pp. | Department of Education |
| 61. | Educational Update, 12/05, 6 pp. | Department of Education |

Hearing Officer's Findings of Fact and Decision                                    12

Case No.  101833

_____

| | | |
|---|---|---|
| 62. | Speech/Language Progress Updated, 12/05, 4 pp. | Department of Education |
| 63. | Report  for Carbone Clinic, 12/19/05, 3 pp. | Department of Education |
| 64. | Carbone Clinic Progress Report, 27 pp. | Department of Education |
| 65. | Letter from Associates, 9/13/05, 4 pp. | Department of Education |
| 66. | Autism Methodologies Analysis, 2 pp. | Department of Education |
| 67. | Autism methodologies, 2 pp. | Department of Education |
| 68. | IEP, 1/23/05, 15 pp. | Department of Education |
| 69. | Vineland Report, 1/11/06, 8 pp. | Department of Education |
| 70. | Speech/Language Evaluation, 8/05 | Department of Education |
| 71. | Observation Report, 11/9/05 | Department of Education |
| 72. | Carbone Clinic Report, 8/4/03 | Department of Education |
| 73. | Excellence PT OT Report, 12/19/05 | Department of Education |
| 74. | Request for Physical Exam, 6/16/05 | Department of Education |
| 75. | C-10 FNR, 1/25/06 | Department of Education |
| 76. | Vineland, 12/20/05 | Department of Education |
| 77. | RSA-2 – PARA | Department of Education |
| 78. | RSA-2 –OT | Department of Education |
| 79. | RSA-2 - Speech | Department of Education |
| 80. | RSA-2 –ABA | |

## FINDINGS OF FACT AND DECISION

Case Number:       106516

Student's Name:      ██████ ████████

Date of Birth:      March 14, 1997

District:      11

Hearing Requested By:  Parent

Dates of Hearing:     October 3, 2006
January 8, 2007
January 26, 2007

Hearing Officer:      Ellen Fluhr Thomas, Esq.

Case No.   106516

---

NAMES AND TITLES OF PERSONS WHO APPEARED OCTOBER 3, 2006

| Christina Thivierge | Attorney | Parent |
| Mark Parent | Chairperson Designee, CSE Region 2 | Department of Education |

NAMES AND TITLES OF PERSONS WHO APPEARED JANUARY 8, 2007

| Christina Thivierge | Attorney | Parent |
| ██████ ██████ | Parent | |
| Aimee Kuhn | Speech Pathologist | Parent |
| Gail Geiser | Director Pathways School | Parent |
| Mark Parent | Chairperson Designee, CSE Region 2 | Department of Education |

NAMES AND TITLES OF PERSONS WHO APPEARED JANUARY 26, 2007

| Christina Thivierge | Attorney | Parent |
| ██████ ██████ | Parent | |
| Alisa Dror | Director of the Tri-State Learning Center | Parent |
| Kimberly Spanjol (Via Telephone) | ABA Home Program Consultant | Parent |
| Mark Parent | Chairperson Designee, CSE Region 2 | Department of Education |

_____

On October 3, 2006, January 8, 2007 and January 26, 2007, hearings were held before the undersigned in the matter of G█████ C.  In attendance on October 3rd, were Christina Thivierge, Esq., representing the parent and child; and Mark Parent, representing the Committee on Special Education.  That first proceeding resulted in an interim order for pendency, providing for reimbursement at a rate not to exceed $90.00 per hour for a combination of home-based and clinic-based Applied Behavioral Analysis (ABA) therapy, speech therapy and occupational therapy.  In addition, the Department of Education (DOE) was to pay for transportation costs.

In attendance on January 8, 2007 were Ms. Thivierge, Esq., representing the parent and child; Ms. J█████ C., parent; Aimee Kuhn, Speech Pathologist; and Mr. Parent, representing the DOE.  Appearing by telephone was Gail Geiser, Director, Pathways School.  Appended to the record is a list of documents received in evidence.

PARENT'S POSITION

The parent initiated an impartial hearing to request a private placement at Pathways School plus home-based services as follows:  23 hours of ABA therapy, 9 hours of speech and language therapy and one hour of occupational therapy.  Since the Pathways School is only a 10-month program, the parent also requested 30 hours of ABA services during the summer, 5 hours of supervision of the ABA program plus tuition for a summer school program. (Tr. at 17-18)

The first witness was Aimee Kuhn, licensed speech and language pathologist. She described some of G█████s problems.  The girl has deficits in 5 areas:  swallowing, articulation, receptive language disorder, expressive language disorder and pragmatic language disorder.  One of her strengths is her voice.  G█████ loves to sing; she has beautiful pitch and beautiful volume.  When Ms. Kuhn began working with the child, G█████ had no language skills.  She was completely enclosed in her own world.  The language that she did have consisted of scripting familiar songs, familiar TV shows.  She had no intent to communicate.  She had fewer than five words.  With extensive speech pathology and speech therapy, G█████ has progressed.  Her current performance is at the level of a 5.5 year old.  Her articulation and phonation and her ability to be understood have improved.  She understands that communication is an exchange between people.

Case No.   106516

---

This year she's been taught to generalize her skills into a broader environment. She was taken to the library, the bowling alley, the park, on play dates – given the opportunity for group settings, preparing her for a school setting. From a one-on-one teaching situation at home, she progressed to a small group in which she began to participate and then to enrollment at the Pathways School. She has transitioned to the Pathways School, first for half a day, now a full day five days a week. Ms. Kuhn recommended continued support of speech and language therapy for 10 hours per week, one hour of which is to be provided by the school. When asked on cross examination about overlap between her work and that of the BA provider, Ms. Kuhn explained that she works on functional vocabulary, helping C███ to say, "I want bacon, please", whereas the ABA provider would teach vocabulary using flip cards. (Tr. at 20-44)

The next witness was Ms. Geiser, co-executive director and speech and language pathologist at the Pathways School who appeared by telephone. She described the Pathways' mission as a very small private school for children on the autism spectrum and for children with neurological disorders. Both the TEACCH method and the Greenspan method are used. "We individualize all of our academics and we do social skills training throughout the day." (Tr. at 46) C███ has been attending since September 2006, first on a part-time basis, arriving for therapeutic lunch and recess and participating in the afternoon curriculum of social studies and science. Now she attends daily until 1:30 pm. There are five students in C███s class. C███ uses the computer-based Ed Mark reading program. She is responding well. She loves electronics. She has increased her sight word vocabulary and there is carry over to pen and paper. For word families she also uses the Preventing Academic Failure (PAF). "She is a great rhymer, but it's harder for her to attend to the first letter of the sight word". (Tr. at 50)  She is able to read familiar sentences. In math, she is able to do some simple addition, but unable to do word problems. In social studies, as the holidays were introduced social goals included how to accept a present, when to say thank you. In science, the class studied the North Pole. At Pathways the staff does qualitative observation to measure progress. One example would be how many times is C███ able to request something without needing a model? There is significant interaction between the home ABA providers and the

_____

school.  G████continues to exhibit tantrumming behavior and crying, but less often and

for shorter duration.  Ms. Geiser opined that Pathways is appropriate for G████and that

the child requires the home-based program as well.  On cross-examination, Ms. Geiser

clarified that the school tuition includes related services provided in a group.  G████s

extra charges are for 1½ hours of individual occupational therapy and 1½ hours of

individual speech therapy at the rate of $75.00 per session. (Tr. at 45-56)

     Attorney Thivierge agreed to produce documentation at the next hearing for

G████s prorated tuition cost of $58,400.00.  In addition, she clarified that the number of

hours of related services demanded in the request for an interim order on pendency was

greater than the actual number of hours for which the DOE will be billed.  Due to the

transition to school G████will only require 23 and not 28 ABA hours, 9 hours of speech

not 10, and only 1 hour of occupational therapy, not 3.  Due to the unavailability of two

witnesses, we adjourned the hearing to January 26, 2007.

     On January 26, 2007, we reconvened.  In attendance were:  Ms. Thivierge, Esq.,

representing the parent and child; Ms. C., parent; Alisa Dror, Director of the Tri-State

Learning Center; and Mr. Parent, representing the DOE.   Appearing by telephone was

Kimberly Spanjol, ABA Home Program Consultant and Supervisor.  Appended to the

record is a list of documents received in evidence.

     Ms. Dror testified that G████s family had contacted her to do an independent

assessment of the girl's placement at Learning Styles and of her current level of services.

She prepared a report based on her observation of G████in her home ABA setting, her

clinic based ABA setting and in her school setting at Pathways.  She spoke with the

parent, the therapist and reviewed relevant progress notes and reports.  Ms. Dror noted

that G████ "was beginning to develop some nice language skills.  She was able to use

primarily short phrases to communicate her needs and wants as well as beginning to make

some comments about her environment, concrete aspects of her environment.  She was

able to remain on task with minimal prompting and primary reinforcement for about ten

minutes at a time.  She engaged in low level self-stimulatory behavior throughout my

observations of her and was also observed to engage in some incidents of verbal protest,

primarily when demands were placed on her, when she was transitioning away from

_____

preferred items or activities." (Tr. at 98-9)  At home C█████ did some elementary math and was able to sound out some phonetic words.  She was able to respond to questions. She was able to follow one and two-step instructions.  Her team was working on daily living skills, self-help skills and teaching her to independently occupy her time.   In school, C█████ was able to participate with support in some of the group activities and learning and social opportunities.  Ms. Dror stated that cooperation between the home team and the school program was necessary to help C█████ transition from the more restrictive one-on-one experience at home to the group setting at school.  "I think the consistency of the demands as well as the consistency in implementing the behavior intervention plans are very essential for her continued success in that sort of environment." (Tr. at 105)  Ms. Dror's opinion was that a one-on-one aide was necessary at school for additional support in learning and generalizing skills which C█████ had mastered at home.  Ms. Dror observed the aide prompting and reinforcing C█████ during tabletop work sheet activities, during a group art project, and during snack time prompting her to initiate some interaction with the other children.  C█████s new skills are learned at home, not in school.  Ms. Dror did not observe the girl spending a lot of productive time engaged without structure.  C█████s team uses visual supports to help her transition and anticipate what is coming next.  The girl is able to dress and undress, brush her teeth and clean up with minimal assistance.  To avoid regression and to continue to learn new skills, Ms. Dror recommended 20-25 hours per week of ABA therapy and 5 hours per week of supervision.  Her opinion was that Pathways was an appropriate placement for C█████ because of the training of the staff, its willingness to implement plans that have been found to be effective for the girl, the staff to student ratio at the school and the services that are available there.  Ms. Dror's estimate of the child's skill level was that of a preschooler.

The next witness was Dr. Spanjol who testified by telephone.  She explained that Applied Behavioral Analysis, which is based on learning theory and on the science of learning is applied to socially significant behavior as a means of shaping and modifying behavior.  ABA breaks down skills into small components so that complicated skills may be taught in small steps.  Data collection is important to determine when a skill is

acquired and when it is time to move on to a more difficult skill. "Different children need different amounts of services and also depending on how well they are doing, then the hours can be decreased as needed. And the goal is always of course, to - you know to pull back on those intensive hours and have them ready to be able to learn in a less restrictive setting." (Tr. at 132) C███learns best in a discrete trial format – sitting at a table with one instructor, few distractions and motivated by effective reinforcers. She has recently learned opposites such as big and little; fast and slow, more and less. For spelling and reading she has learned consonant vowel combinations. On her reading mastery program since October when she was on lesson 40, she has progressed to lesson 61. She's learning addition, subtraction and handwriting. She's made social gains – knows how to order pizza, stand in line, pay, choose a table, clean up after the meal. Dr. Spanjol described the talking chair used by the therapists to redirect C███. She emphasized the importance of consistency in the behavioral plan to prevent self-injurious behaviors or scripting or tantrumming.

The last witness was Ms. C., C███s mother. She stated that her daughter had been diagnosed with autism at the age of two and placed in an early intervention public preschool program with extended day hours. C███did not make much progress in the center-based program, but did make minimal progress at home. She attended a school-age program for two years, during which there was a tremendous increase in stimulatory behavior – "she would bang her chest, she would hit her head, verbal scripting and singing all day, no functional language at all." (Tr. at 159) She lost the skills which she had mastered in her home-based program. At the mother's request, C███was removed from school and was placed in a one-on-one home program, receiving 45 ABA hours, with supervision and occupational therapy and speech therapy. The child's interfering behavior decreased and her skill acquisition increased. The team of home therapists worked on increasing C███s tolerance to group instruction. Beginning with 15-minute intervals and gradually increasing the time to 20 minutes and then ½ hour and finally 1½ hours, she was able to function well enough in a group setting, that her mother decided to place her in Pathways. Dr. Spanjol has trained the Pathways staff on how to implement C███s behavior plan. There is constant collaboration between the home and school.

Case No.  106516

_____

Ms. C. stated that after Christmas break or when a staff member goes on vacation, C███ regresses. "Pathways is a ten-month program…So the additional two months in the summer will be difficult.  We will need to come up with some programming activities and some special education camp per se so that she can stay redirected and engaged through the summer…I have interviewed many camps.  But the one I feel that is – would be beneficial to her is a camp called SNACK, it's in the city, it's on 86[th] street and it is a special needs program that was started by a mom of an autistic child." (Tr. at 171)  Ms. C. plans on having one of C███s home therapists take the girl to the facility for a weekend activity program starting next month to help C███ become familiar with the camp.  The cost of the three-week summer camp is $750.00 per week.

FINDINGS

The Individuals with Disabilities Education Act (IDEA), provides that every child with a disability is entitled to a free appropriate public education (FAPE) in the least restrictive environment.  If, as in this case, the Department of Education has been unable to provide an appropriate public placement for a student, the parent may be entitled to reimbursement for a private placement if the private placement is appropriate and if the equities support the parents' claim. (Burlington School Comm. v. Department of Education, 471 U.S. 359 [1985]).

To be deemed "appropriate", a program must be reasonably calculated to provide educational benefit. (Board of Education v. Rowley, 458 U.S. 176 [1982]).  The expert witnesses have described C███s progress as a result of her attending the Pathways School combined with her receiving after school services in a home-based program.  I find that the parent has sustained her burden to prove the appropriateness of the school placement and of the after school services.  However, as Dr. Spanjol stated, the goal is always to pull back on those intensive hours and have the child ready to learn in a less restrictive setting.  To meet that goal, I find that it is reasonable to specify in C███s IEP exactly what level of mastery will be necessary to eventually trigger discontinuing the home services.  Should the parents at that point, wish to reinforce the school based program with home instruction, that choice would be similar to opting for a private tutor

or for participation in an after school activity – which would not be the financial responsibility of the DOE.

I further find based on the witnesses' testimony that during this summer when school is not in session that C███ will require 30 hours per week of ABA services at home and 5 hours per week of ABA supervision.

I also find that the parents have not met their burden to prove the appropriateness of the summer camp which the mother has chosen for C███. No witness from that facility appeared.

I also find that there is nothing in the record to suggest that the parents have not cooperated with the DOE.

ORDER

It is therefore ordered that upon proper documentation of a prorated invoice from the Pathways School that the amount of $58,400.00 be paid directly to the Pathways School.

It is also ordered upon proper proof of payment that the parents be reimbursed at a rate not to exceed $90.00 per hour for the at home services provided to C███

23 hours of ABA

5 hours of ABA supervision

9 hours of speech and language therapy

1 hour of occupational therapy

It is also ordered that upon proper proof of payment the mother be reimbursed for transportation costs.

It is also ordered that during this summer upon proper proof of payment the parents be reimbursed at a rate not to exceed $90.00 per hour for 30 hours per week of ABA services and 5 hours per week of ABA supervision.

It is also ordered that the request for camp tuition in the amount of $750.00 per week be denied.

Case No.   106516

_____

It is also ordered that specific goals be written for C█████to indicate what level of mastery will trigger discontinuing the home-based services.

Dated:  February 16, 2007

*Ellen Fluhr Thomas* (PS)

ELLEN FLUHR THOMAS, ESQ.
Impartial Hearing Officer

EFT:ds

**PLEASE TAKE NOTICE**

**Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.**

**"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed. The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed. If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b]) Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.**

**Directions and sample forms for filing an appeal are included with this decision. Directions and forms can also be found in the Office of State Review website: www.sro.nysed.gov/appeals.htm.**

Case No.   106516

_____

## DOCUMENTATION ENTERED INTO RECORD

A.    Demand for Due Process, 9/11/06, 3 pp.          Parent

B.    Findings of Fact and Decision, 7/31/06, 9 pp.    Parent

D.    Speech and Language Evaluation with Annual      Parent
      Goals and Short Term Objectives attached Report
      by Aimee M. Kuhn, MS, CCC-SLP/L

E.    Educational Progress Report, 10/27/06, 5 pp.     Parent

F.    Progress Report with ABLLS Update Key Report     Parent
      Attached, 10/06, 3 pp.

G.    ABA Progress Report, 10/23/06, 3 pp.             Parent

H.    Occupational Therapy Evaluation Report,          Parent
      9/22/06, 3 pp.

I.    Letter from ▮▮▮▮C▮▮▮▮to Michelle Beatty,        Parent
      8/28/06, 1 p.

J.    Speech/Language Evaluation Report, 4/06, 5 pp.   Parent

K.    Occupational Therapy Progress Report,            Parent
      3/28/06, 2 pp.

L.    Home Program Cumulative Graphs, 3/15/06,  8 pp.  Parent

M.    Educational Update Report, 3/15/06, 5 pp.        Parent

N.    Behavioral Report, 3/4/06, 3 pp.                 Parent

## AMENDED FINDINGS OF FACT AND DECISION

Case Number:            106518

Student's Name:         D███████ C████████

Date of Birth:          March 14, 1997

District:               11

Hearing Requested By:   Parent

Date of Hearing:        October 11, 2006
                        January 19, 2007

Hearing Officer:        Marc Weiner, Esq.

Case No.   106518

_____

### NAMES AND TITLES OF PERSONS WHO APPEARED OCTOBER 11, 2006

| | | |
|---|---|---|
| Christina Thivierge | Attorney, Mayerson & Associates | Parent |
| Mark Parent | Chairperson Designee, CSE, District 11 | Department of Education |

### NAMES AND TITLES OF PERSONS WHO APPEARED JANUARY 19, 2007

| | | |
|---|---|---|
| Christina Thivierge | Attorney, Mayerson & Associates | Parent |
| J████ C████ | Parent | |
| Kimberly Spanjol (via telephone) | Ph.D. ABA Consultant/Supervisor | Parent |
| Gail Geiser (via telephone) | Co-Executive Director, Pathways School | Parent |
| Aimee Kuhn | Speech Pathologist | Parent |
| Alisa Dror | Independent Expert | Parent |
| Mark Parent | Chairperson Designee, CSE, District 11 | Department of Education |

Case No.  106518

An impartial hearing was conducted on January 19, 2007, for a child who was classified as having a disability under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §1415 (f)(1). This hearing was held in New York City. This hearing officer was appointed to hear the case on September 11, 2006. The Impartial Hearing Office assigned this case, case number 106518. The parents and the child were represented by Ms. Chritina Thivierge. The District was represented by Mr. Mark Parent. The closing date was January 26, 2007.

Ms. Thivierge made a motion to amend the parents' request for an impartial hearing. The motion was presented to this hearing officer and the District ten or more days prior to the hearing. The motion was for this hearing officer to order the District to additionally pay for the cost of summer camp. Over the District's objection, this hearing officer permitted the request to be amended. I found that the District was not prejudiced in presenting its case or rebutting any evidence that the parent would present. At the hearing the District did not present any witnesses or submit any documentary evidence.

The parent requested school tuition payment for the child D.C. from January 1 through the end of the school year in June of 2007. There was an additional request for the District to pay 23 hours of Applied Behavioral Analysis (ABA) a week during the school year and 30 hours of ABA services a week during the summer months; payment for the speech and language therapist and the occupational therapist and for the summer camp. The service providers outside the Pathways School are requested to be paid through an RSA letter, at the BOE rate of $90 an hour.

The parents' first witness was Dr. Kimberly Spanjol, an ABA therapist and the supervisor of D.C.'s home program. The witness has a PhD in forensic psychology and completed all the course work and supervisory hours necessary for Board Certification in behavior analysis. Dr. Spanjol has worked with children on the autism spectrum for fifteen years.

Dr. Spanjol testified that the child has deficits in many areas and has characteristic behavior for self-injury aggressive behavior. The behavior does affect the way the child learns. Her social interaction skills are very limited, to the point where she would rather

Case 1:08-cv-02806-DLC    Document 1-2    Filed 03/17/2008    Page 69 of 77
Hearing Officer's Amended Findings of Fact and Decision                               3

Case No.   106518

play by herself than with others.  D. only communicates at this time in short four or five word phrases. Verbal and non-verbal skills are very limited.

The child has developed self-stimulatory behavior---repetitive behavior, and self-injurious behavior---cheek biting, picking and scratching her skin, which interferes with learning.

Parents' F in evidence, the progress report of Dr. Spanjol, discusses the ABA therapist's work with D.C

a.  Redirecting the child so as the child does not get stuck with repetitive behavior.

b.  Positive and high frequency of reinforcement.

c.  Structured one on one learning situations.

d.  Extending the amount of time the child can sit and work with a therapist and teacher in both a home and school environment.

e.  Collection of data to determine whether or not the program developed for use in the home needs to be modified.

f.  Work on generalizations.

Dr. Spanjol testified that she and the personnel are in constant communication during the school week.

D. has a severe expressive and receptive language delays and deficits.  Her present language skills were taught through her ABA sessions. The child uses one or two words to express her wants.  When prompted her phrases are longer.  When there are breaks from school or services, D. regresses and many phases of her work need to be reworked. Behavior problems are always a focus since it interferes with learning.

The child has great difficulty in transitioning.  Even going from her home environment to the community usually causes resistance and even a tantrum.  The team was very careful with D. when she started the Pathways School, even for a couple hours a day.  The team slowly increased the length of the school day for D. monitoring her behavior during these transitions.  The process is to observe and make sure the child is

Case 1:08-cv-02806-DLC    Document 1-2    Filed 03/17/2008    Page 70 of 77
Hearing Officer's Amended Findings of Fact and Decision                          4

Case No.   106518

not pushed too fast, resulting in problematic behavior at the same time reinforcing behavior that allows her to make progress.

The witness recommended the 23 hours of ABA the child is presently receiving, five hours of supervision that the witness provides, one hour of OT and nine hours of speech. During the summer, when she is not in school, D. should have her ABA hours increased.

On the autism scale, it was the witness' opinion that D. was on the low functioning level and also presents self-injurious behavior and oppositional behavior. It is also the opinion that D. is severely autistic.

The next witness, Gail Geiser, is the co-executive director of Pathways School and the speech and language pathologist at Pathways School. Ms. Geiser has a master's degree in speech and language pathology, is an ASHA certified speech and language pathologist, is licensed in NYS and has a permanent certification as a teacher of the speech and hearing handicapped. The witness has been the co-executive director of Pathways for eight years. On pages 94-95 of the transcript the witness described a typical day for D. in the Pathways School.

Progress in the Pathways School is measured by using anecdotal notes. Additionally the school communicates with the parents daily through a "communication notebook".

Transitioning for D. from home learning to a school environment was very difficult, as reported by the first witness. The transitioning began by having D. attend only half days in the afternoon. In the beginning it was very difficult for D. to even make it through two hours of the school day. The key to the transitioning into the Pathways School was the coordination between the parents, the therapists and the School. When D's cheek biting began, the various team members, the school, and the family coordinated the charting of the behavior to determine what preceded it to try to decrease such injurious behavior.

Hearing Officer's Amended Findings of Fact and Decision                                    5

Case No.   106518

_____

The witness testified that presently D is working on simple math and reading.  The child has made gains in learning in a group environment, but it was extremely difficult.  The group setting for D. was problematic in that her anxiety level increases in such social situations.  D. is starting to bring the skills she has learned at home into the classroom and at the same time, she has acquired additional skills in the class.

The school is following the same behavior plan as her home therapists and the school has a 'sensory diet' for D.  There are cards in place that allow the child to request and/or earn the sensory places that are needed, not only that are on the schedule.

The directors place the students in the various classes by determining the functional and academic level of the children.  D. is in the low end of the class, the middle and the high end, of course determining the subject matter.

Ms. Geiser testified that the full tuition for D. was prorated as of January 1st and is $58,000.  This includes additional services for speech and language, for occupational therapy and for a one-to-one aide.

The third witness presented for the parents, was Ms. Aimee Kuhn.  Ms. Kuhn has a master's in speech and language pathology and is certified in both the national and state level. She has worked exclusively with children with autism for almost the last ten years. The witness present work consists of working with children in their home setting, who are on the autistic spectrum scale.  She is also a supervisor for a consulting company that employs 65-70 therapists.

Ms. Kuhn currently works with D. for approximately ten hours of speech a week and about five hours or less for her ABA.  Parents' H in evidence is a speech and language evaluation written by the witness.  Ms. Kuhn started working with D. in 2004. According to the witness D. is "very severe in the …six areas, major areas of speech, that being oral motor and sensitivity and swallowing.  That includes voice and resonation, articulation, phonology (phonetic), receptive language, expressive language and pragmatic language." (Tr. 134-135)  Through testing it was determined that D. "…is approximately at the four age equivalency solidly in speech and language pathology, but she does have splinter skills up until the five year age range, which means that she's

Case 1:08-cv-02806-DLC    Document 1-2    Filed 03/17/2008    Page 72 of 77
Hearing Officer's Amended Findings of Fact and Decision                          6

Case No.   106518

mastered some skills up higher without requiring some of the lower skills in that same level, or in that category." (Tr. 135)

D. has a severe deficit in the area of oral motor and sensitivity---she has an apraxia of speech. It is a motor programming problem that results in her repetitive speech pattern. There are also severe delays in both expressive and receptive language. They've put together a sensory diet, working with the school and with Ms. Spanjol.  At the moment, the team needs more data to determine what works best for D. with the sensory diet. The providers are using various physical activities and music in the sensory diet to for her to learn how to relax when there are feelings of being overwhelmed. The witness is working on Ds deficits in expressive and receptive language. In transitioning, the focus is to keep behaviors at a minimum and the various providers believe that D. could handle a full day program at her school.

The witness in her report recommended ten hours of speech and language therapy a week.  The ten hours is still her recommendation.  The hours of speech and language therapy are still needed.  She has showed progress, going from almost no communication skills to speaking in sentences.  She is showing progress, but the transitional period is very difficult for her as well as when she is on breaks from school.  To continue progress in school and home, D still requires reinforcement and work with her speech and language deficits.

The parents' fourth witness was Alisa Dror, director of clinical services at the Tri-State Learning Center. Ms. Dror has a master's degree in special education and is a Board certified behavior analyst.  Ms. Dror observed D. for the evaluation report submitted as Parents' G in evidence. The witness opined after the observations that D was functioning at a preschool level and with language, about a two-year level.

In observing the child in the Pathways School, D. was able to remain on task with the other children in the room, although she still needed a high level of support.  Yet the frequency of interfering behaviors was similar to the frequency of such behaviors observed in other environments.  She was starting to generalize the skills she learned at

Case No.   106518

_____

home to the school environment.   There was self-stimulatory behavior observed during her down time.

In order for this child to progress, she still requires one to one ABA work.   The school is providing a structured environment for D in both social and living skills.   It is important for the child to take the next step into a less restrictive environment.   Going from a totally home based school environment to a classroom setting, with a teacher and other students.

Any program where there are a number of providers needs to be supervised.   The learning skills for the child must be broken down and taught in a systematic progression. The supervisor must oversee such work as well as to observe and collect data to determine with the team whether or not the program requires a modification.

The witness concluded that D still needs her home program and that during breaks, such as holidays, illness and vacations, the child has a significant loss in skills previously obtained.   The providers then spend time on the skills that they already worked on with D.   D engages in her self-stimulatory behavior when there is more down time from vacations or breaks.   Support during these times is necessary in order to keep D. on track focusing on the environment around her.   Ms. Dror's recommendation is for D. to continue at the Pathways School and to continue the extended day ABA program.

Ms. C., the parent, was the last witness at the hearing.   Ms. C. stated that her daughter is to be ten years old in March of 2007. D. attended a BOE center base program as early intervention and preschool.   The Board of Education recommended D receiving extended-day hours of ABA.   In the school-age program the self-injurious behavior and the self – stimulatory behavior increased.   The public school placement she attended could not meet D.s needs and in September of 2004, D started a home program.

Ms. C. testified she felt the Pathways School was an appropriate place for D. One reason was the incredible coordination the school took on itself to smooth D's transition into the school, with the service providers and the parents.   Additionally the school has continued working with the outside providers with their behavioral plan. There has been progress in that she's simply in school for longer periods of time.

Case No.   106518

In the summer when there will be less support for D, Ms. C. found a summer camp.  All the children in Snack (the camp) are on the autistic spectrum.  One of D's therapists will accompany D. to camp.  The camp is for three days a week.  The program is for three weeks and costs $2,200.  Ms. C. testified to all the meetings she attended with teachers and BOE personnel in trying to find an appropriate placement for D.  She always responded to any inquiry and provided the BOE with any evaluations she obtained on D.

## DECISION

A board of education may be required to pay for educational services obtained for student by his or her parent, if the services offered by the board of education were inadequate or inappropriate, the services selected by the parent were appropriate, and equitable considerations support the parent's claim (Burlington School Comm. v. Dept. of Educ., 471 U.S. 359[1985]}.  The failure of the parent to select a program known to be approved by the state in favor of an unapproved option is not itself a bar to reimbursement (Florence County School Dist. Four v. Carter, 510 U.S. 7 [1993]).  I find that respondent has prevailed with respect to all three criteria for an award of tuition for the Pathways School (to be paid directly to the school), tuition reimbursement and related services.  The related services are to be paid to the providers through RSA letters.  I further find that the District shall pay the tuition for the summer camp.

The District conceded Prong I.  I find the witnesses that were presented by the parents were credible.  The child is on the autistic spectrum and viewed by Dr. Spanjol as on the low functioning level with self-injurious behavior.  The witness recommended 23 hours of ABA, with an increase during the summer and five hours of supervision for the ABA programming; an hour of OT, nine hours of speech.  Ms. Gail Geiser testified as the co-executive director of the Pathways School.  The witness testified as to the child's present work, her progress---the child has made progress at the school and the difficulties she is still having in communication and self-stimulating and self-injurious behavior.  This witness and the parent testified as to the work all of the ABA therapists and the personnel of the school in helping the child transition to the Pathways School.

Case No.   106518

_____

I find that the Pathways School is an appropriate placement for the child.  I find that the parent made all efforts in working with the DOE in trying to find an appropriate placement for the child.  Thus I find that equitable considerations fall on the side of the parent.

I find that due to regression of the child even during short breaks from school, the District shall pay the tuition of the Snack Camp.  I find that all the children of the camp are on the autistic spectrum and the staff has experience with such campers.  Such testimony on the type of camp reveals an appropriate program for the child.

I order that the District directly pay tuition to the Pathways School the student's first day at the Pathways School in September 2006 through the end of the school's year in June of 2007 The District shall reimburse the parent for transportation to the school.  I order the District to pay for the summer program and that payment shall be made directly to the summer program.

I order the District to pay the service providers for ABA, ABA supervision, OT and speech.  These providers shall be paid directly through RSA letters.

The related services for the 2006-2007 school year shall be and the providers shall receive payment for 23 hours of ABA a week; thirty hours of ABA a week from July 1 through August 31st.  Five hours of ABA supervision during the week for the weeks the child receives ABA service.  Nine hours a week of speech 1:1 @ home; One hour a week of OT, 1:1 @ home.

I order the parent to submit official documentation of the tuition of the camp to the District, prior to any payment to the camp.

Date:  March 15, 2007


*Marc Weiner, Eq.*

MARC WEINER, ESQ.
Impartial Hearing Officer


MW:nn

Case No.   106518

_____

## PLEASE TAKE NOTICE

Within 35 days of the date of this decision, the parent and/or the New York City Department of Education has a right to appeal the decision to the State Review Officer of the New York State Education Department under Section 4404 of the Education Law and the Individuals with Disabilities Education Act.

"The notice of intention to seek review shall be served upon the school district not less than 10 days before service of a copy of the petition for review upon such school district, and within 25 days from the date of the decision sought to be reviewed.  The petition for review shall be served upon the school district within 35 days from the date of the decision sought to be reviewed.  If the decision has been served by mail upon petitioner, the date of mailing and the four days subsequent thereto shall be excluded in computing the 25- or 35-day period." (8NYCRR279.2[b])  Failure to file the notice of intention to seek review is a waiver of the right to appeal this decision.

Directions and sample forms for filing an appeal are included with this decision.  Directions and forms can also be found in the Office of State Review website:  www.sro.nysed.gov/appeals.htm.

Case No.   106518

---

## DOCUMENTATION ENTERED INTO RECORD

| | | |
|---|---|---|
| A. | Demand for due Process, 9/11/06, 3 pp. | Parent |
| B. | Findings of Fact and Decision by Hearing Officer Keniry, 8/9/06, 12 pp. | Parent |
| C. | Report by Carbone Clinic, 11/14/06, 3 pp. | Parent |
| D. | Pathways School Tuition Letter, 11/13/06, 4 pp. | Parent |
| E. | Progress Note, Pathways School, 11/13/06, 1 p. | Parent |
| F. | Educational Progress Report, 11/11/06, 6 pp. | Parent |
| G. | Program Review, 11/1/06, 8 pp. | Parent |
| H. | Speech and Language Evaluation Report, 7 pp. | Parent |
| I. | ABLLS Assessment, 2 pp. | Parent |
| J. | Occupational Therapy Evaluation, 10/17/06, 3 pp. | Parent |
| K. | Letter to Michelle Beatty, 8/28/06, 1 p. | Parent |
| L. | Progress Report, Carbone Clinic, 8/25/06, 3 pp. | Parent |
| M. | Pathways School Tuition Letter, 7/10/06 4 pp. | Parent |
| N. | Speech and Language Evaluation Report, 4/06, 5 pp. | Parent |
| O. | Occupational Therapy Report, 3/28/06, 2 pp. | Parent |
| P. | Pathways School Calendar, 2006-2007, 1 p. | Parent |